PETER HABETZ, JR., ET AL. *v.* KEN CONDON
(14461)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued October 28—decision released December 22, 1992

*George F. Martelon, Jr.,* with whom, on the brief, was *Thomas B. Lynch,* for the appellants (plaintiffs).

*Louis M. Pacelli,* with whom was *John T. Grillo,* for the appellee (defendant).

KATZ, J. The dispositive issue in this appeal is whether a home improvement contractor can recover damages from a homeowner who acted in bad faith for work performed under a contract that did not comply with General Statutes § 20-429 (a),[1] which is part of chapter 400, General Statutes §§ 20-418 through 20-432, known as the Home Improvement Act (act). The plaintiff Peter Habetz, Jr.,[2] filed a multicount complaint against the defendant, Ken Condon, doing business as Condon Contracting, alleging breach of contract, certain statutory violations and negligence. The defendant counterclaimed to recover for the nonpayment of moneys allegedly due and owing, to which the plaintiff asserted special statutory defenses arising out of

[1] General Statutes § 20-429 provides in pertinent part: "REQUIRED CONTRACT PROVISIONS; ENFORCEABILITY. NEGATIVE OPTION PROVISIONS PROHIBITED. OWNER TO RECEIVE COPY. CONTRACTS CONSIDERED HOME SOLICITATION SALES. (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor."

[2] Peter Habetz, Jr.'s wife, Joyce B. Mihalko, is also a plaintiff on the complaint, which is not involved in this appeal. Habetz is the sole defendant on the counterclaim, however, and only the counterclaim is at issue in this appeal. Therefore, when we refer to the plaintiff, it is to Peter Habetz, Jr., solely.

the defendant's noncompliance with the writing requirements of the act; General Statutes §§ 20-427 and 20-429; and the notice provisions of the Home Solicitation Sales Act. General Statutes § 42-135a. After a trial to the court, judgment was rendered for the plaintiff on the breach of contract count of his complaint and for the defendant on his counterclaim, the court having found that the plaintiff had asserted his statutory defenses in bad faith.[3] The plaintiff appealed to the Appellate Court and we transferred his appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The trial court found the following facts. In March, 1989, the plaintiff and the defendant entered into a five page written contract whereby the defendant would construct a two-story addition to the plaintiff's home in Orange, for an agreed upon price of $103,000. The contract outlined the work to be performed and set forth a time schedule for payments based on designated stages of construction. The plaintiff operated a business that installed hot tubs and swimming pools in private homes. He owned his own company, had been engaged in this type of business for over twenty-four years and was licensed by the state of Connecticut.

In July, 1989, additional work and modifications (extras), as set forth in a two page written proposal, were agreed upon by the defendant and the plaintiff. The plaintiff, who requested that these extras be performed, never signed the proposal despite repeated requests by the defendant. The cost of that work, as itemized and set forth in the document, was $6244.

---

[3] Although the plaintiff in his brief challenged the trial court's factual findings regarding bad faith, he abandoned that claim at oral argument before this court. We therefore consider that claim waived. *Rostain* v. *Rostain,* 213 Conn. 686, 688 n.3, 569 A.2d 1126 (1990).

The plaintiff paid $93,000 on the original contract and nothing toward the extras.

The plaintiff brought this action against the defendant in four counts: (1) breach of contract due to defective, improper and negligent work; (2) breach of the statutory requirements of the act; General Statutes § 20-429 (a); (3) violation of General Statutes §§ 42-110b and 42-110g regarding unfair trade practices; and (4) negligence resulting in the plaintiff sustaining emotional distress and financial loss.

In addition to his answer denying the plaintiff's allegations in counts one through four, the defendant filed a counterclaim in two counts, alleging: (1) the plaintiff's failure to pay $10,000 owed under the written, signed contract; and (2) the plaintiff's failure to pay $6244 for the extras that the defendant had performed at the plaintiff's request. The plaintiff asserted, inter alia, the special defenses that the writing requirements of the act; General Statutes § 20-429; and the notice provisions of the Home Solicitation Sales Act; General Statutes § 42-135 (a); had not been satisfied.[4] In his answer, the defendant denied the statutory violations.[5]

The trial court rendered judgment for the plaintiff on the first count of the complaint in the amount of

[4] General Statutes § 20-429 (e) provides that each home improvement contract is considered a home solicitation sale pursuant to chapter 740 of the General Statutes and is subject to its requirements. Chapter 740 is the Home Solicitation Sales Act. General Statutes § 42-134a et seq. The requirements for the cancellation provision in such a contract are contained in General Statutes § 42-135a, which provides for a right to cancel a home solicitation sale transaction without penalty or obligation within three business days from entering into the transaction.

[5] The plaintiff also raised as a special defense that $93,000 had already been paid. The defendant's admission of this fact in his reply constitutes a judicial admission. *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 191, 148 A.2d 554 (1959); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 6.7.1.

$16,542.50,[6] and for the defendant on both counts of the counterclaim, awarding him $10,000 on the first count and $6244 on the second. Although the court concluded that the contract did not comply with § 20-429 (a) (6),[7] the court's finding of bad faith on the part of the plaintiff caused it to conclude further that "the minor noncompliance by the defendant with § 20-429 (a) [did] not bar a recovery under the first and second counts of the counterclaim."[8] This appeal followed.

The plaintiff contends that because the contract failed to include the mandatory notice of cancellation provision, the contract was unenforceable and thus the trial court should not have rendered judgment for the defendant on his counterclaim despite the trial court's finding regarding the plaintiff's bad faith. This contention raises the issue of the validity of this court's dic-

[6] The court also rendered judgment in favor of the defendant on the three remaining counts of the plaintiff's complaint and no issue has been raised on appeal by either party regarding the plaintiff's complaint.

[7] In response to another issue regarding the validity of the contract, as the trial court concluded, the act does not expressly require the signature of all of the owners of the real estate where the improvement is made. General Statutes § 20-419 (6) defines "owner" as "a person who owns or resides in a private residence and includes an agent thereof." General Statutes § 20-429 (a) states that a home improvement contract is not valid or enforceable against an owner unless it meets the requirement of the statute for a signature by the owner. The clear implication of the act is that a home improvement contract that meets all of the statutory requirements of § 20-429 (a) is enforceable against any property owner or resident of a private residence or their agent who has signed the contract. The act only precludes enforcement of an otherwise valid and enforceable contract against a co-owner or some other resident of the property who does not sign a contract meeting the statutory requirements.

[8] The defendant had alleged bad faith in only the second count of the counterclaim. The court, however, as fact finder, determined that the evidence of bad faith permeated the dealings between the parties and thus related to work performed pursuant to the original contract as well as to the list of extras. The plaintiff does not claim that the trial court's ruling went beyond the permissible scope of the pleadings.

tum in *Barrett Builders* v. *Miller,* 215 Conn. 316, 328, 576 A.2d 455 (1990), and the related cases decided the same day: that a home improvement contractor, in suing for breach of a contract that violates § 20-429, can avoid the normal bar to his pursuit of such a cause of action by proving that the homeowner invoked, in bad faith, the contractor's statutory violation as a basis for his own repudiation of the contract. *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 576 A.2d 464 (1990); *Sidney* v. *DeVries,* 215 Conn. 350, 575 A.2d 228 (1990); *Liljedahl Bros., Inc.* v. *Grigsby,* 215 Conn. 345, 576 A.2d 149 (1990).

The plaintiff urges us to enlarge upon the line of cases that have interpreted the act to preclude a suit by a contractor based on the contract or on the three common law principles of restitution in the absence of strict compliance with the provisions of the act.[9] He asks that this court go further and abandon the one exception reserved in dictum in the *Barrett Builders* line of cases.[10] The plaintiff maintains that a contractor cannot, in his own action to collect payment at the contract rate for contract work, excuse his noncompliance with the contractual stipulations required by the statute by proving that the homeowner has raised the contractor's statutory violation in bad faith.

In mounting his attack on the applicability of a defense of bad faith, the plaintiff accepts the standard

[9] In addressing cases brought thus far under the act, this court has collectively referred to theories of quasi contract, quantum meruit and unjust enrichment as quasi contract claims of restitution. *Barrett Builders* v. *Miller,* 215 Conn. 316, 317 n.1, 576 A.2d 455 (1990).

[10] We interpret the dictum in *Barrett Builders* v. *Miller,* 215 Conn. 316, 328, 576 A.2d 455 (1990), to mean that a homeowner cannot in bad faith invoke the contractor's statutory violation as a basis for his own repudiation of the contract. Whether proof of bad faith in some other manner on the part of the homeowner will also allow a contractor who has failed to comply with the requirements of the act to recover is a question left for another day.

definition of bad faith as the absence of good faith. *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 171, 530 A.2d 596 (1987). Bad faith in general implies both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Black's Law Dictionary (5th Ed. 1979). Bad faith means more than mere negligence; it involves a dishonest purpose. *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 644, 447 A.2d 1163 (1982); *Hartford National Bank & Trust Co.* v. *Credenza*, 119 Conn. 368, 371, 177 A. 132 (1935).

In *Barrett Builders* v. *Miller*, supra, 328, *A. Secondino & Son, Inc.* v. *LoRicco*, supra, 340, *Sidney* v. *DeVries*, supra, 354, and *Liljedahl Bros., Inc.* v. *Grigsby*, supra, 350, we recognized that proof of bad faith on the part of the homeowner is an exception to what might otherwise be a harsh lesson to the home improvement contractor unable to recover due to a violation of the act. The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act.[11] To support the position this court took in the *Barrett Builders* line of cases, we need look no further than the maxim that no person may take advantage of his own wrong. *Glus* v. *Brooklyn Eastern District Terminal,* 359 U.S. 231, 232, 79 S. Ct. 760, 3 L. Ed. 2d 770

---

[11] It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact. *Warner* v. *Konover,* 210 Conn. 150, 156, 553 A.2d 1138 (1989). As stated earlier, any claims regarding the trial court's finding of bad faith on the part of the homeowner have been waived.

(1959); *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 565, 316 A.2d 394 (1972). This deeply rooted principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar what would otherwise be inequitable reliance on statutes. See, e.g., *Selzer* v. *Baker,* 295 N.Y. 145, 65 N.E.2d 752 (1946) (doctrine's application to preclude the finality of tax titles when warranted); 51 Am. Jur. 2d, Limitation of Actions § 431 (1970) (doctrine's application to prevent a fraudulent or inequitable resort to the statute of limitations).

A bad faith exception is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to demands of justice and good conscience. The law does not permit the exercise of a right to repudiate a contract when the exercise of such a right in bad faith would work an injustice. Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. See, e.g., *Warner* v. *Konover,* 210 Conn. 150, 154–56, 553 A.2d 1138 (1989); 3A A. Corbin, Contracts (1960) § 541, p. 97; 5 S. Williston, Contracts (3d Ed. Jaeger 1961) § 670, p. 159; R. Summers, " 'Good Faith' in General Contract Law and the Sales Provisions of the Uniform Commercial Code," 54 Va. L. Rev. 195, 234 (1968). To demand this implicit component but do nothing about its absence would be at best incongruous, and, more accurately, grossly unfair. Thus, a contractor, otherwise precluded from recovering moneys owed for his work because of a violation of the act, must be permitted to assert that the homeowner's bad faith precludes him from safely repudiating the contract and hiding behind the act in order to bar the contractor's recovery.

In *Barrett Builders* and the related cases decided the same day, this court determined that the purpose of

the act would be frustrated if contractors could operate in violation of it and still obtain the restitutionary value of the services they had performed. *Barrett Builders* did not distinguish between the act's various provisions, some of which may concededly be more consistent with, and integral to, the protective concerns underlying the act's enactment.[12] We have read the act to preclude a contractor's recovery on the various restitutionary doctrines so as to effectuate the legislative purpose: to require that contractors comply with the act. *Barrett Builders* v. *Miller,* supra, 325. "Clearly, the legislature is entitled, in the first instance, to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer." Id., 326. The objective of the act is to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from substantial work by an unscrupulous contractor. 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck.

In the absence of specific legislative indication, however, we do not read the act to override the general

[12] It is interesting to note that the legislature has chosen not to revise the act following this court's interpretation of it in 1990. Despite the majority's recognition, in *Barret Builders* v. *Miller,* 215 Conn. 316, 326, 576 A.2d 455 (1990), of the bad faith exception, and an invitation to address certain issues, as well as the "harsh results" as labelled by the dissent, no legislative action has been taken. The absence of any such legislative reaction to the *Barrett Builders* line of cases is noteworthy. Where this court interprets a statute and the legislature fails to take action to change that interpretation, it raises the presumption that the legislature has acquiesced in that interpretation. *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984 Rev.) § 45.10. We take the failure of the legislature to amend General Statutes § 20-427 et seq. as acquiescence in *Barrett Builders* v. *Miller,* supra. "The legislature is presumed to be aware of the interpretation that courts have placed on existing legislation and of the implications that we will draw from its inaction." *Scheyd* v. *Bezrucik,* 205 Conn. 495, 506, 535 A.2d 793 (1987).

principle embodied in the bad faith exception: that an individual should not profit from his own deceptive and unscrupulous conduct. This court never intended to advance the cause of the unscrupulous. We can only presume that the legislature had a similar intent. The question is not whether the legislature specifically carved out this bad faith exception, as the plaintiff has argued, but whether, in the absence of specific legislative indication otherwise, a doctrine founded on public policy and containing a strong strain of estoppel can prevent a misbehaving party from invoking the benefits of a statute which is absolute on its face. To deny the contractor any opportunity of recovery after he has completed his end of the bargain if he has persuaded the trier of fact that a statutory remedy is being invoked by a homeowner in bad faith would be to countenance a gross injustice and indeed to encourage its perpetuation and to assure its success.

The judgment is affirmed.

In this opinion the other justices concurred.