[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, plaintiff Eugene Michaud, a registered Connecticut home improvement contractor, has sued defendant Alfred Goffe, the owner and occupant of a three-family residential property located at 79-81 Baltimore Street in Hartford, Connecticut, to foreclose on a mechanic's lien which was filed and recorded as against the subject property to secure the unpaid balance of $23,967.45 allegedly owed to him by Goffe for certain fire damage restoration work he performed on the property under a written home improvement contract between August 1992 and February 1993. Claiming that he has CT Page 5284-SSS fully performed under the contract, the plaintiff contends that the defendant must pay him in full for all services he rendered thereunder.
The defendant answered the plaintiff's amended complaint by denying or leaving the plaintiff to his proof as to each essential allegation of his claim, and by interposing two special defenses. As his first special defense, he alleged that the contract on which the plaintiff's claim is based is invalid and unenforceable against him under General Statutes § 20-418 et seq., the Home Improvement Act, and General Statutes § 42-134a, et seq., the Home Solicitation Sales Act, because: "a) [i]t fails to recite a definite starting date and a definite completion date[;] b) [i]t does not have a rescission date[; and] c) . . . the "Date of Transaction" was not filled in on the contract." First Special Defense to the Amended Complaint, ¶ 3. As his second special defense, the defendant has alleged that the plaintiff renovated his property in an "unskillful and negligent . . . manner[, used] unsuitable materials [in the process, and thus left it with] many defects[.]" Second Special Defense to the Amended Complaint.
The plaintiff, in turn, has denied all allegations of the defendant's special defenses and pleaded in avoidance of the first special defense as follows:
 1. The defendant committed bad faith and is therefore precluded from repudiating with impunity the home improvement contract referred to in the Complaint.
 2. The defendant waived any and all rights and claims which he has or may have to assert the invalidity of the contract referred to in the Complaint.
Affirmative Response to First Special Defense.
Trial in this matter was held on July 12, 1996. At the trial, the plaintiff and the defendant both testified and the plaintiff presented several photographic and documentary exhibits. Thereafter, on two separate occasions, the Court heard argument from counsel on the factual and legal issues here presented for its decision. Based on the evidence so presented and the arguments so entertained and considered, the Court hereby makes the following findings of fact and CT Page 5284-TTT conclusions of law:
Findings of Fact
1. The plaintiff, Eugene Michaud, is a 71-year-old registered Connecticut home improvement contractor who specializes in fire damage repair work. He has been continuously so registered and employed for over three decades.
2. The work performed by Mr. Michaud is typically paid for by insurance companies. It is therefore his practice to perform such work on fire-damaged premises as the owner requests and the owner's insurance company is willing to pay for.
3. To obtain new business, Mr. Michaud keeps a monitor that enables him to monitor all fires that occur in the State of Connecticut. Upon making contact with the owner of fire-damaged premises, he typically offers a free detailed estimate of every aspect of damage to the building and awaits the owner's and the owner's insurer's response as to whether and in what fashion any restoration work should be done.
4. The defendant, Alfred Goffe, is a 67-year-old resident of Hartford, Connecticut who now, as in 1992 and 1993, makes his home at 79-81 Baltimore Street in Hartford. Mr. Goffe's Baltimore Street home is a three-family residential property from which he generates income by renting out the two apartments he does not occupy.
5. Mr. Goffe is a native of Jamaica. He was educated to the sixth grade. He is not a home improvement contractor.
6. Some time in mid-summer of 1992, the upper floor of Mr. Goffe's Baltimore Street residence was severely damaged by fire.
7. Upon learning of the fire, Mr. Michaud went to Mr. Goffe's house to offer his services to repair it. After examining the premises with Mr. Goffe's permission, Mr. Michaud concluded that total damages to the premises were approximately $200,000.
8. After giving this estimate to Mr. Goffe, Mr. Michaud CT Page 5284-UUU learned that Mr. Goffe had only $102,000 of insurance coverage for the property in question. Accordingly, he prepared and submitted a written proposal to do repair and restoration work on the premises for a total price of $100,467.05.
9. Appended to the proposal was a 12-page itemized list of tasks to be performed for the proposed contract price. At no point in this detailed list was any mention made of or sum allocated for painting, either inside or outside the fire-damaged premises. Indeed, the only reference to paint in the entire proposal was as follows: "Contractor will furnish all necessary paint for interior and exterior." No quantity, unit price or total price for materials, listed as "taxable," or other price for labor, listed as "non taxable," was included in the proposal.
10. Also appended to the proposal was a half-page printed document entitled "notice of cancellation," which was a blank verbatim copy of the notice of an owner's right to cancel a home solicitation sales agreement or a home improvement contract which must be completed and included in any such agreement or contract to make it valid and enforceable against an owner under General Statutes §§ 42-135a(2) and/or 20-429a(6). As attached to the proposal, this notice of cancellation listed no date of transaction or date by which notice of cancellation was to be delivered to the plaintiff to rescind any agreement the parties might reach if the proposal were accepted.
11. On the first page of the proposal, the "date work will start" was listed as follows: "Approx 8/10/92. As soon as agreed figure is reached with ins. co." On that same page, the "date work will be completed" was listed as "3 months from beginning date weather permitting."
12. On August 3, 1992, the plaintiff and the defendant signed the proposal on the first and last pages thereof. At no time before or after signing the proposal did the plaintiff complete the "notice of cancellation" described in paragraph 10 above by listing the "date of transaction" or the date by which the owner was to notify the contractor of his intent to cancel the transaction.
13. Work on the project began on or about August 10, 1992 and proceeded without incident until early November of CT Page 5284-VVV 1992. In that time, the plaintiff completed all of the work he believed to have been called for under the contract and received payments totalling $76,499.60 from the defendant and his insurance company.
14. When, however, the plaintiff asked the defendant to pay him the unpaid balance due him under the contract, a dispute arose as to whether or not the plaintiff was responsible for painting the defendant's newly renovated house. According to the defendant, the plaintiff was bound by the contract both to furnish all paint for the project and to paint the house himself. The plaintiff disagreed, countering correctly that all the contract required of him with respect to painting was to furnish the paint that would be used on the project.
15. With the parties' positions on the painting controversy solidified, defendant Goffe consulted a lawyer to determine what rights and obligations he had under the contract. During this consultation, the defendant learned for the first time about the existence and the substantive provisions of the Home Improvement Act and was advised by his lawyer that the contract could not be enforced against him because it failed, in the above-listed respects, to comply with the Act. At no time following the receipt of this information and advice did the defendant ask the plaintiff to perform any further work on his Baltimore Street property, either under the subject contract or on any other basis.
Conclusions of Law
1. Notwithstanding the allegations of his amended complaint, the plaintiff now concedes, both in his testimony and in the arguments presented by his attorney, that the contract here at issue does not comply with the Home Improvement Act because it does not list either a rescission date or a date of transaction. This concession is entirely appropriate for the following reasons.
General Statutes § 20-429(a) provides in relevant part as follows:
 No home improvement contract shall be valid or enforceable against an owner unless it: CT Page 5284-WWW
 (4) contains the date of the transaction, . . . [and] (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740.
Under this statute, it is clear beyond question that the failure of a home improvement contractor to include either a date of transaction or a notice of the owner's cancellation rights in accordance with chapter 740 in a home improvement contract affords the owner a fully effective defense as to any claim made against him under the contract. See BarrettBuilders v. Miller, 215 Conn. 316 (1990).
The contract here at issue is a home improvement contract within the meaning of the Home Improvement Act. To be valid and enforceable against the defendant-owner, it must therefore comply fully with Section 20-429.
This contract was signed and dated by both parties on August 3, 1992. Even so, it does not list a "date of transaction" or state that the date the contract is signed is to be so considered. The contract therefore does not comply with General Statutes § 20-429 (a)(4).
The failure to list a date of transaction becomes especially significant in assessing the sufficiency of the notice of the owner's cancellation rights which was appended to the contract. General Statutes § 20-429 (a)(6) requires that that notice be "in accordance with the provisions of chapter 740," wherein the Home Solicitation Sales Act, General Statutes § 42-134a et seq., is codified. The relevant portion of the Home Solicitation Sales Act is General Statutes § 42-135a, which provides in relevant part as follows:
 No agreement of the buyer in a home solicitation sale shall be effective if it is not signed or dated by the buyer or if the seller shall:
 (2) Fail to furnish each buyer. at the time he signs the . . . contract . . . a completed form in duplicate, captioned "NOTICE OF CANCELLATION", which shall be attached to the contract . . . and easily detachable, and which shall contain in ten-point boldface type the following information and statements in the same language as that used in the contract:
CT Page 5284-XXX
NOTICE OF CANCELLATION
(Date of Transaction)
 YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.
 IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.
 IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT SALE, OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.
 IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.
 TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO . . . (Name of Seller) AT . . . (Address of Seller's Place of Business) NOT LATER THAN MIDNIGHT OF . . . (Date)
I HEREBY CANCEL THIS TRANSACTION. . . . (Date)
(Buyer's Signature)
(Emphasis added). The unambiguous purpose of requiring the inclusion of a "completed" notice of cancellation form as an integral part of the contract is to let the owner-consumer know by when and to whom he must communicate his intent to CT Page 5284-YYY cancel the contract if that is his desire. By failing to fill out the notice with the date by which the contract will become effective if not rescinded, the contractor deprives the owner of such notice. Moreover, by failing to specify the date of transaction, the contractor deprives the owner of the ability to calculate that date for himself, by adding three days to the date of transaction, as indicated in the body of the notice. A notice of cancellation which fails to list either such date obviously fails, both in form and in substance, to comply with General Statutes § 42-135a, as incorporated by reference into the Home Improvement Act by General Statutes § 20-429(a)(6).
In this case, the notice of cancellation fails to comply with the requirements of § 20-429 (a)(6) because it does not list either the rescission date or the date of transaction in the required statutory notice of cancellation form appended to the contract.
2. Though a home improvement contract which does not comply fully with Section 20-429 is not valid or enforceable against an owner, our Supreme Court has ruled that an owner "cannot in bad faith invoke the contractor's statutory violation as a basis for his own repudiation of the contract."Habetz v. Condon, 224 Conn. 231, 236 n. 10 (so interpreting dictum in Barrett Builders v. Miller, supra). The standard definition of bad faith, applicable in this context as in most others, is "the absence of good faith." Habetz v. Condon,
supra, 236-37 (citing Buckman v. People Express Inc.,205 Conn. 166, 171 (1987)).
 Bad faith in general implies both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refuse to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . .
According to the Habetz Court, the rationale for adopting a bad faith exception to the strict enforcement of the statute was as follows:
In Barrett Builders v. Miller, supra, 328, A.CT Page 5284-ZZZ Secondino Son, Inc. v. L. Ricco, [215 Conn. 350], 354, and Liljedahl Bros., Inc. v. Grigsby, [215 Conn. 345], 350, we recognized that proof of bad faith on the part of the homeowner is an exception to what might otherwise be a harsh lesson to the home improvement contractor unable to recover due to a violation of the act. The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act.
Habetz v. Condon, supra, 237.
Continuing with its analysis, the Habetz Court explained that
 A bad faith exception is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to demands of justice and good conscience. The law does not permit the exercise of a right to repudiate a contract when the exercise of such a right in bad faith would work an injustice. Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. [Citations omitted]. To demand this implicit component but do nothing about its absence would be at best incongruous, and, more accurately, grossly unfair. Thus, a contractor, otherwise precluded from recovering moneys owed for his work because of a violation of the act, must be permitted to assert that the homeowner's bad faith precludes him from safely repudiating the contract and hiding behind the act in order to bar the contractor's recovery.
Id., 238
So stating, the Court made it clear that proof of bad faith could not consist only of proof that the contractor had performed valuable services for which the homeowner refused to pay. Indeed, said the Court, "In Barrett Builders and the CT Page 5284-AAAA related cases decided the same day, this court determined that the purpose of the act would be frustrated if contractors could operate in violation of it and still obtain the restitutionary value of the services they had performed. . . . We now read the act to preclude a contractor's recovery on the various restitutionary doctrines so as to effectuate the legislative purpose: to require that contractors comply with the act." Habetz v. Condon, supra, 239 (citing BarrettBuilders v. Miller, supra, 325)[1]
Instead, concluded the Court, the true focus of any bad faith analysis must be on the homeowner who seeks to invoke the statute to avoid enforcement of the contract. The question thus presented under this doctrine, which is "founded on public policy and contain[s] a strong strain of estoppel," is whether the homeowner is attempting to "profit from his own deceptive and unscrupulous conduct." Id., 240. If the contractor proves that he is; id. 237 n. 11 (declaring that the burden of proving bad faith is on the contractor); then the "misbehaving [homeowner is prevented] from invoking the benefits of the statute;" id., 240; for to do otherwise "would be to countenance a gross injustice and indeed to encourage its perpetuation and to assure its success." Id.
3. The plaintiff concedes, as he must, that there is no evidence in this case of estoppel-like conduct involving the deliberate requesting or acceptance of services with the intention not to pay for them. The defendant in this case is a man of limited education and no apparent sophistication who had no experience as a home improvement contractor, no knowledge of the Home Improvement Act or of his rights thereunder, and no intent to deceive or take advantage of the plaintiff when he signed the contract in question or accepted services thereunder. Indeed, the first time the defendant learned that he might have any such rights was after all work to be performed under the contract had already been completed.
Even so, the plaintiff urges this Court to find bad faith in the defendant's repudiation of his obligations under the contract because the original reason for the defendant's refusal to pay him the balance due thereunder was the wholly unjustified claim that the plaintiff was required by the contract to paint his newly renovated residence. Such a repudiation, the plaintiff argues, constitutes bad faith because it is CT Page 5284-BBBB
 "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." . . . [I]t involves a dishonest purpose.
Habetz v. Condon, supra, 237.
To prevail on this claim, the plaintiff must persuade the Court: first, that a finding of bad faith can be predicated on the repudiation of a contract which was entered into and fully performed by the contractor without any fraudulent, deceptive or misleading conduct by the homeowner; and second, if so, that the defendant's repudiation of this contract has been made in bad faith.
The Court agrees with the plaintiff that a claim of bad faith can be predicated upon the bad faith repudiation of a contract that was entered into and fully performed by the contractor without any fraudulent, deceptive or misleading conduct by the homeowner. It does so primarily because the above-quoted alternative formulation of the test for bad faith, as enunciated by the Supreme Court in Habetz, will remain the law of this State until the Supreme Court itself disavows it. Cf. Roberts v. Dinnis, 35 Conn. App. 253, 259
(1994) (where the Appellate Court, citing Habetz v. Condon,
supra, 236 n. 10, declined to "extend" the bad faith exception to claims not based on bad faith relating to the formation of, or inducement to enter into, a home improvement contract).
Under the above-referenced formulation of the bad faith test, a homeowner acts in bad faith when he neglects or refuses to fulfill some duty or some contractual obligation, and in so doing is prompted by an interested or sinister motive rather than by an honest mistake as to his rights or duties. The question thus arises whether or not the plaintiff has met his burden of proving these facts by a fair preponderance of the evidence.
As to the existence of a duty or a contractual obligation, one is initially faced with the following dilemma: how can a duty or obligation of any kind arise under a contract which is invalid and unenforceable as a matter of law? The Court concludes that it can, at least for the CT Page 5284-CCCC purpose of this test, for otherwise the Habetz Court's lengthy discussion of this very test and of the implied covenant of good faith and fair dealing, as applied to defective home improvement contracts, would be pointless and nonsensical. Here, then, the question presented as to whether or not the defendant homeowner has neglected or refused to fulfill some duty or some contractual obligation does not concern the contract's compliance with the Home Improvement Act, but the nature and extent of the substantive rights and obligations ostensibly arising thereunder.
In this case, the contract obliged the defendant homeowner to make full payment under the contract once it was fully performed. The defendant has refused to honor this obligation even though the plaintiff long ago completed everything he was required to do under the contract.
The final question thus becomes, whether or not the defendant's refusal to honor his obligation to pay has been made in bad faith. Was it, in the words of the Habetz Court, "prompted by an honest mistake as to [the defendant's] rights or duties, . . . [or] by some interested or sinister motive[?]" Id., 237.
The Court is not persuaded by a fair preponderance of the evidence that the defendant's invocation of his statutory rights has been made in bad faith. Initially, it must be observed that the defendant's claim that the plaintiff contractor was bound by the contract to paint his newly renovated house is wholly without merit. The language of the contract plainly requires that the plaintiff "furnish all paint necessary" for external and internal painting of the building, but says nothing whatsoever about doing the painting work himself. Other parts of the contract describe tasks to be performed by the plaintiff, including framing, repairing, sandblasting and installing various items in and upon the premises. These items, all billed as non-taxable, are clearly labor expenses. As for painting, however, there is simply no indication that the plaintiff would be required to do any of it, either inside or outside or outside the defendant's home.
That the Court can state with great confidence and conviction that the contract did not require the plaintiff to paint the defendant's house does not mean, however, that a layman with no home improvement experience and a sixth grade CT Page 5284-DDDD education would necessarily reach the same conclusion. Indeed, the Court finds that this defendant was honestly confused on this very subject, and that he contacted his lawyer to get guidance as to how he should proceed. The Court finds that this defendant did not approach his lawyer with the dishonest purpose of avoiding a clear contractual obligation, but with the honest, though misguided, purpose of enforcing what he thought were his legitimate contractual rights.
When the defendant learned from counsel that he could avoid the obligation to pay any more money under the contract due to its invalidity and unenforceability under General Statutes § 20-429, he thus stood on the same footing as any other honest citizen who might unexpectedly learn that he had such a legal right. The fact that he has since followed his lawyer's advice by seeking to rely on the protection of § 20-429
is surely not a bad faith repudiation of the contract, for as our Supreme Court stated in Wadia Enterprises v.Hirschfeld, 224 Conn. 240, 249 (1994):
 There is nothing dishonest or sinister about homeowners proceeding on the assumption that there is a valid contract, enforcing its provisions, and later, in defense to a suit by the contractor, upon learning that the contract is invalid, then exercising their right to repudiate its.
For all of the foregoing reasons, the Court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that the defendant's refusal to pay the balance allegedly due him under the contract between them constitutes a bad faith repudiation of his contractual obligations. The Court therefore enters judgment for the defendant because the contract is not valid or enforceable under General Statutes § 20-429 (a)(4) and (6).
Michael R. Sheldon, J.