[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO DISCHARGE MECHANIC'S LIEN
CT Page 3552
The plaintiff, Dana L. Cipoletta, has filed an Application to discharge a mechanic's lien placed on her residence by the defendant, Jack Miniter, on the grounds that the work performed by the defendant amounted to home improvements within the meaning of § 20-419 (4) of the Connecticut General Statutes, a portion of the Home Improvement Act, and that the defendant is not a registered and licensed contractor pursuant to §20-420, and that the parties did not enter into a written contract required by § 20-429 of the Connecticut General Statutes.
The defendant represented himself at the hearing before the undersigned. He admitted that he was not licensed or registered in accordance with the requirements of the Home Improvement Act, but attempted show that the plaintiff's bad faith should bar her from raising his failure to comply with the Home Improvement Act as a defense to his mechanic's lien.
Section 20-429 of the Connecticut General Statutes provides, in pertinent part:
 (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor . . . .
The plaintiff met the defendant at her children's day care center. She learned that he was a home improvement contractor and asked him to do painting, tile work, and other work at the residence which she had recently purchased. On several occasions the defendant represented to the plaintiff that he was a contractor, and she understood this to mean that he was a licensed contractor. In June, 1996 the parties entered into a verbal agreement concerning the work that the defendant would perform for the plaintiff and the price that the plaintiff would pay the defendant, $3500. The plaintiff thereafter paid the defendant $1000. and the defendant commenced work. CT Page 3553
As part of the verbal agreement the defendant agreed to paint a large portion of the plaintiffs residence. He assured the plaintiff that he would be finished with this painting at the end of the July 4th weekend. This assurance was important to the plaintiff because she and her children would be out of the residence at that time. The plaintiff's son had asthma, and the plaintiff wanted to be sure that the painting was completed prior to her' son's return to minimize the paint fumes that he had to breathe. The defendant assured her that the painting would be completed prior to the family's return. However, it was not completed. The defendant had badly underestimated the time that it would take him to complete the painting and had also done work for a third party during the time he was supposed to be working at the plaintiff's residence.
The defendant's performance was also lacking in other respects. He advised the plaintiff to purchase tile. She purchased the tile, which the defendant installed on the floor. The plaintiff later learned that the tile was not intended to be used as floor tile. Since the installation the tile has started to pull away from the floor and the plaintiff needs to completely replace it. The defendant cut the tile in the plaintiff's bedroom, did not use sufficient material to protect her rug, and stained the bedroom rug. He also brought his grandchildren to the plaintiff's house while he was working. The plaintiff was concerned because the defendant left the children unattended in her house and allowed them to do such things as drink juice on her new furniture. The defendant also splattered paint on an heirloom mirror in the plaintiff's house.
The defendant did not attempt to deny the plaintiff's claims as to his workmanship and work habits except to say that he could have removed splattered paint if the plaintiff's had only given him an opportunity to do so.
In Barrett Builders v. Miller, 215 Conn. 316, 323,576 A.2d 455 (1990), the Connecticut Supreme Court held that, absent proof of bad faith on the part of the homeowner, § 20-429 permits no recovery in contract or quasi contract by a contractor who has failed to comply with the statute's written contract requirement. In Habetz v. Condon, 224 Conn. 231, 618 A.2d 501 (1992) the Court upheld an award of damages to a contractor who did not comply with the provisions of the Home Improvement Act because the homeowner had invoked the Act in bad faith. The Court in Habetz
did not describe the actions of the homeowner which constituted CT Page 3554 bad faith, but it did state:
 Bad faith in general implies both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Black's Law Dictionary(5th Ed. 1979). Bad faith means more than mere negligence; it involves a dishonest purpose. Funding Consultants, Inc. v. Aetna Casualty Surety Co., 187 Conn. 637, 644, 447 A.2d 1163 (1982); Hartford National Bank Trust Co. v. Credenza, 119 Conn. 368, 371, 177 A. 132 (1935).
224 Conn. at 237.
In this case there was no evidence that the plaintiff acted in bad faith. She had legitimate complaints about the defendant's work. Therefore, she has legitimately invoked the Home Improvement Act as a defense to the defendant's mechanic's lien. Since the; contract on which the defendant's mechanic's lien is based is unenforceable under the Home Improvement Act, the mechanic's lien is invalid and the Application is granted.
By the court,
Aurigemma, J.