[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Barry Ertelt d/b/a Hallmark Associates, hereinafter (Ertelt), brings this action for money damages against Katherine Overton and Thomas Thornber, hereinafter (Overton) and (Thornber). Ertelt alleges in the First Count that he acted as subcontractor for Thornber, as general contractor for work to be done on residential premises owned by the defendant CT Page 10769 Overton. Thornber died before trial and Overton was substituted as Executrix of the Estate of Thornber. The Second Count realleges all facts in the First Count seeking money damages, the reasonable value of which is $20,358.77 n the grounds that the value of the property has increased by the amount of service and material provided. The Third Count sounds in unjust enrichment at the expense of Ertelt. The Fourth Count asserts that Overton and Thornber were operating a business as defined in C.G.S. § 42-110 et seq. Ertelt asserts that he has been damaged by Overton's and Thornber's fraudulent and deceptive business practice.
Ertelt alleged in Count One several allegations asserting that Overton and Thornber conspired to defraud Ertelt into providing services of value in the improvement of the property.
Overton as owner of the premises alleges inter alia that the plaintiff's complaint is invalid and unenforceable because it fails to comply with § 20-429 (a) of the Connecticut General Statutes because it is not in writing and that Overton is not liable for the extra work referred to in paragraph 7 of Counts 1, 2, 3 and 4 because such alleged work violates § 20-429 (a) Connecticut General Statutes.
The Second Special defense claims that Ertelt was paid.
 Sec. 20-479. Required contract provisions; enforceability. Negative option provisions prohibited. Owner to receive copy. Contracts considered home solicitation sales. Commissioner may dispense with certain contract requirements. Court may order recovery of payment of work performed. (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or CT Page 10770 registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor.
 (b) No home improvement contract shall be valid if it includes any provision obligating the owner to instruct the home improvement contractor, by a date determined by such contractor, that periodic home improvements are not to be performed unless it also includes a provision requiring the contractor to remind the owner of that obligation by means of a card or letter mailed to the owner and postmarked not earlier than twenty days, and not later than ten days, prior to such date.
 (c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed.
 (d) The commissioner may, by regulation, require the inclusion of additional contractual provisions.
 (e) Each home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the requirements of said chapter regardless of the location of the transaction or of the signing of the contract.
 (f) Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) or subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the CT Page 10771 owner, provided the court determines that it would be inequitable to deny such recovery.
The plaintiff in order to circumvent the provisions of the Home Improvement Act attempted to establish that the plaintiff, Ertelt, was a subcontractor with respect to the work and material provided. Thornber who lived with Overton in a family arrangement according to the testimony of Ertelt's wife, consistently denied that he was the general contractor. Attorney DeMatteo offered testimony that Thornber at all times insisted that although he lived on the premises that Thornber did not act as the general contractor. An examination of Exhibit A in the amount of $20,195.98, which shocked Overton and Thornber when presented, persuades the court that Ertelt was the general contractor. Ertelt engaged two subcontractors; Bulmer and EW Building who billed him and Ertelt added a 10% profit plus 10% overhead. Thornber had no contract or agreement with either Bulmer or EW Building. Nothing was contained in writing for the subcontractors under Exhibit A billing and by adding profit and overhead leads the court to conclude that Ertelt at the time of the billing recognized himself as the general contractor.
Ertelt argues that "a home improvement contractor in suing for breach of contract that violates § 20-429 can avoid the normal bar to his pursuit of such a cause of action by proving that a home owner invoked, in bad faith, the contractor's statutory violation as a basis for his own repudiation of the contract." Habetz v. Condon, 224 Conn. 231 (1992) citingSecondino Sons Inc. v. LoRicco, 215 Conn. 336, 576 A.2d 464
(1990).
Overton understood from the verbal discussions between Overton, Thornber and Ertelt that the second phase of the improvement to her residence was to be between $7500-$8000. When the bill (Exh. A) was presented, Thornber said it was outrageous. Attorney DeMatteo was allowed to testify without objection that Thornber was not overseeing the job. Testimony as to the amount of hours Ertelt spent on the Overton job was not credible under the circumstances since he was doing another job at the same time. Overton testified she had no written contract with Ertelt.
From all evidence adduced at trial this court cannot conclude that there was a bad faith scheme to defraud Ertelt. A reasonable dispute arose between the parties. There is no evidence for this court to conclude that it should invoke equity pursuant to § CT Page 1077220-429 (f).
The defendant argues in conclusion that the dispute before the court arose because the agreement was not reduced to writing as provided by law.
The court, as earlier discussed, does not conclude that the defendant is acting in bad faith by refusing to pay the claims of the plaintiff. The purpose of the Home Improvement Act was meant to protect the consumer public. The protection was designed to know when the work was to start, the extent of the work and theamount to be paid. (emphasis added) The protections are similarly afforded in our statutes for Real Estate Commissions (see C.G.S. § 20-325 (a)) and the Statutes of Fraud (see C.G.S. § 52-550). The agreement must be in writing and this court will only grant relief if inequitable or bad faith.
 "We recognize that proof of bad faith on the part of the homeowner as an exception to what might otherwise be a harsh lesson to the home improvement contractor unable to recover due to a violation of the act. The central element giving rise to his exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract would be to allow him to benefit from his own wrong. . . . Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act." Habetz,
supra at p. 237.
The defendant plead payment of what they felt was the contract price. Unlike Habetz, nothing was in writing. It would be inequitable to compel payment of a bill for home improvement beyond the expectations of the homeowners without some written agreement. Bad faith has not been shown in this case.
Accordingly judgment is entered in favor of the defendants.
Frank S. Meadow Judge Trial Referee