[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This is a ten count complaint in which the plaintiff, Russell Picerno, alleges causes of action sounding in contract and tort against the defendant, Alexis, Inc. (Alexis), an administrator of workers' compensation claims for the state of Connecticut and its claim representative Lisa Marci, both referred to as defendant for purposes of this motion. Plaintiff claims that the defendant wrongfully and in bad faith contested his claim and delayed payment of permanent disability benefits to which he was entitled, and that these actions constitute serious wilful misconduct by the defendant.
The facts alleged in the complaint are as follows. On December 4, 1990, the plaintiff suffered a shoulder injury in the course of his employment as a corrections officer employed by the state Department of Correction. The plaintiff was ordered by his physician to engage in nonhazardous duty, which was not available within the scope of the plaintiff's position. On December 17, 1990, the plaintiff applied for workers' compensation benefits, and his claim was investigated and approved for total temporary disability benefits. In February, 1991, the plaintiff assisted in the opening and operation of a pawn shop, and continued his activities there throughout the period in which he received workers' compensation benefits.
At the time of the plaintiff's injury, and up to May 2, 1991, the MacDonald Companies (MacDonald) administered workers' compensation claims for the self-insured state of Connecticut workers' compensation fund for state employees. The plaintiff alleges that the administrator and his supervisor at his correction's job knew of his work at the pawn shop and knew that he received no income from the work. On or about May 2, 1991, the defendant, Alexis, replaced MacDonald as administrator of the state's workers' compensation fund.
On June 25, 1991, the plaintiff underwent corrective surgery on the injured shoulder and on July 19, 1991, the defendant was informed by its rehabilitation specialist that the plaintiff was post-surgery and unable to return to his former position at that time. This was confirmed in subsequent independent medical examinations at the defendant's request. On August 4, 1992, the plaintiff's physician diagnosed him as having reached maximum medical improvement with a 25% permanent disability of the left upper extremity and a 7% permanent disability of the neck. On September 10, 1992, the independent medical examiner for the defendant found the plaintiff to have reached maximum medical CT Page 1993 improvement, assigning a 25% permanent partial disability of the left upper extremity and a 5% disability of the cervical spine.
On August 17, 1992, the workers' compensation commission sent notice to the plaintiff that the plaintiff's employer, through the defendant, intended to discontinue or reduce payments effective August 14, 1992, due to alleged violation of General Statutes § 31-290c, and that the validity of the plaintiff's injuries was in question. The plaintiff alleges that this notice was a result of an allegedly erroneous report by the private investigative firm hired by the defendant to conduct surveillance of the plaintiff.
On September 22, 1992, at an informal hearing before the commission, the defendant claimed that the plaintiff had violated General Statutes § 31-290c by accepting temporary total disability payments while working at the pawn shop. On December 30, 1992, at a formal hearing before the commission, the defendant terminated all of the plaintiff's workers' compensation benefits, based on allegations of fraud. At this time, the plaintiff alleges he was eligible for permanent partial disability benefits according to the IME physician but that the defendant then requested that the office of chief state's attorney investigate the claim, and on January 15, 1993, the assistant attorney general in attendance at the hearing referred the case to the workers' compensation fraud unit of the office of the chief state's attorney for investigation. On February 8, 1993, inspectors from the fraud unit reviewed the defendant's file on the plaintiff's claim. The plaintiff alleges that a subsequent warrant for his arrest was a result of the allegedly erroneous information supplied by the defendant, and that his arrest on April 22, 1993, was extensively reported by the news media. On July 6, 1993, all charges were dropped by the state's attorney's office. On August 4, 1993, the defendant entered into a voluntary agreement with the plaintiff regarding his permanent partial disability benefits and benefits were subsequently paid in full. The issue of whether the plaintiff violated General Statutes § 31-290c is still pending before the workers' compensation commission.
On September 24, 1997, defendant filed this motion for summary judgment on all ten counts of the plaintiff's complaint. At oral argument plaintiff withdrew the fourth and ninth counts of his complaint. CT Page 1994
— I —
The defendant claims summary judgment on counts one, two, three, seven and eight on the ground that the plaintiff's claims are barred because the Workers' Compensation Act provides the exclusive remedy to the plaintiff.
General Statutes § 31-284 (a) provides in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment" However, the plaintiff's claims are on their face allegations of wilful misconduct which do not fall within the purview of the statute, and, thus, survive the exclusivity provisions as the "one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct."Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 106 (1994); see also Stabile v. Southern Connecticut Health Sys., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 326120 (February 7, 1996, Thim, J. ("[t]he various Workers' Compensation Acts were not intended or designed to compensate a claimant for an insurer's intentional misconduct in failing to settle or pay a claim for workers' compensation benefits"); Rotz v. MiddlesexMutual Assurance Co., Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 307488 (January 27, 1995, Hauser, J.) (13 Conn. L. Rptr. 324, 326) ("these statutes do not give the commissioner the power to hear intentional tort claims").
In construing the complaint in the light most favorable to the plaintiff; Miller v. United Technologies Corp. , supra,233 Conn. 751; the plaintiff sufficiently alleges that the defendant engaged in wilful misconduct, thus removing this action from the purview of the workers' compensation statutes. The defendant has failed to provide sufficient evidence or supporting documentation to demonstrate the absence of any genuine issue of material fact regarding this issue.
Accordingly, the defendant's motion for summary judgment on counts one, two, three, seven and eight on the ground that the plaintiff's claims are barred pursuant to the exclusivity provision of the workers' compensation act is not viable.
— II — CT Page 1995
In counts one and three of the complaint, the plaintiff alleges breach of the implied covenant of good faith and fair dealing and breach of contract and the defendant moves for summary judgment as to those counts on the additional grounds that: (1) it is not an insurer, but rather the administrator of the state's self-insurance program; and (2) the plaintiff is not a party to, nor identified as a third party beneficiary of, the contract between the state and the defendant, and thus, there is no contractual relationship between the parties. The defendant, however, has failed to provide sufficient concrete evidence or supporting documentation to demonstrate the absence of any genuine issue of material fact about its contractual responsibilities and relationships. Defendant's motion for summary judgment on these grounds as to counts one and three is not viable.
— III —
In count two, the plaintiff alleges that the defendant's denial of workers' compensation benefits was a bad faith failure to make payments with full knowledge that there was no reasonable basis for such denial. The defendant moves for summary judgment as to count two on the ground that it acted in good faith at all times.
"Bad faith" in general-implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. "Black's Law Dictionary
(5th Ed. 1979). Bad faith . . . involves a dishonest purpose."Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501 (1992); see also Sponzo v. Hartford Underwriters Ins. Group, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 543134 (March 15, 1996, Aurigemma, J.) holding that in order to establish bad faith there must be evidence that the defendant acted with a dishonest purpose, moral obliquity, furtive design or ill will.
In Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 99,111; the court stated that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. See also Picataggio v. Romeo,36 Conn. App. 791, 794 (1995) ("[a] question of intent raises an CT Page 1996 issue of material fact, which cannot be decided on a motion for summary judgment").
Defendant's motion for summary judgment on count two of the plaintiff's complaint is not viable.
— IV —
The defendant moves for summary judgment as to count five, which alleges CUTPA violations, on the grounds that: (1) the plaintiff failed to exhaust his administrative remedies; (2) the alleged acts were not performed in a "trade or business"; and (3) the alleged acts have not been committed with such frequency as to constitute a general business practice, citing Quimby v.Kimberly Clark Corp. , 28 Conn. App. 660 (1992).
In that case the plaintiff employee contended that her employer, which was self-insured for the purposes of workers' compensation, had administered her claim of injury improperly, failed to pay benefits in a timely manner or to investigate reasonably and promptly the plaintiff's claim and failed to enter into a reasonable resolution of the plaintiff's claim all of which constituted CUTPA violations. The Appellate Court, however, rejected this claim: "The plaintiff does not allege that the defendant committed these acts `in the conduct of any trade or commerce.'. . . The relationship in this case is not between a consumer and a commercial vendor, but rather between an employer and an employee. There is no allegation in the complaint that the defendant advertised, sold, leased or distributed any services or property to the plaintiff . . . [T]he employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." Id., 670.
In the present case, the defendant is the employer's administrator for workers' compensation claims. As in Quimby, the relationship between the plaintiff and the defendant cannot be characterized as that of a consumer and a vendor.
Defendant's motion for summary judgment as to count five is granted.
— V —
Count six of the plaintiff's complaint sounds in defamation, specifically, slander per se. The defendant moves for summary CT Page 1997 judgment as to count six on the grounds that it published no statements, and, alternatively, that any alleged published statements were privileged. In Miles v. Perry, 11 Conn. App. 584,594 n. 8 (1987) the Appellate Court stated:
 A qualified or conditional privilege arises out of an `occasion,' such as, when one acts in the bona fide discharge of a public or private duty. . . . It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bonafide discharge of a public or private duty. . . . It is a question of fact for a court or a jury, however, to determine whether the defendant has abused a conditional privilege. . . . A conditional or qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith.
Aside from the question as to whether defendant is entitled to a qualified privilege, plaintiff has not alleged malice, improper motive or bad faith nor any facts substantiating such allegations. The plaintiff, as a private individual, is required to prove actual malice, in order to rebut the defense of privilege merely by a preponderance of the evidence. Miles v.Perry, supra, 11 Conn. App. 590.
Defendant's motion for summary judgment as to count six of the plaintiff's complaint is granted.
— VI —
The defendant moves for summary judgment as to count seven, alleging malicious prosecution, on the ground that the criminal prosecution was sought by the state's attorney's office, not the defendant. The elements of malicious prosecution have been alleged, including the claim of malice as required by Mulligan v.Rioux, 229 Conn. 716, 745 (1994). The issue of malice presents a question of material fact and summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 111. CT Page 1998
Defendant's motion for summary judgment as to count seven is not viable.
— VII —
Count eight of the plaintiff's complaint alleges intentional infliction of emotional distress resulting from termination of benefits. The defendant moves for summary judgment as to count eight on the grounds that: (1) as related to the allegations of slander, the defendant is protected by absolute privilege; and, alternatively, (2) the defendant did not act with the requisite intent and any actions do not rise to the level of "extreme and outrageous" sufficient to support this claim.
In order to prevail in a claim for intentional infliction of emotional distress four elements must be established, one of which is that the conduct was extreme and outrageous. Liability for intentional infliction of emotional distress requires "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Martinez-Duffyv. DeJesus, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545193 (May 1, 1996, Wagner, J. ) (17 Conn. L. Rptr. 64, 66). Citing DeLaurentis v. New Haven,220 Conn. 225, 266-67 (1991). See also Mellaly v. Eastman KodakCo., 42 Conn. Sup. 17, 20 (1991) in which the court noted that liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
This court has previously followed the prevailing view in our Superior Court that the determination of whether alleged conduct is sufficiently extreme or outrageous resides in the first instance with the court. Randall v. Halloran Sage, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533629 (February 16, 1995, Wagner, J.). Lefevre v.McDowell, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 573396 (January 18, 1998, Wagner, J.). The plaintiff's allegations that the defendant wrongfully terminated benefits does not rise to that level of extreme and outrageous conduct required by the tort.
The motion for summary judgment as to count eight of the CT Page 1999 plaintiff's complaint is granted.
— VIII —
Count ten of the plaintiff's complaint alleges invasion of privacy, specifically placing the plaintiff in a false light before the public. The allegations are similar to those in count six alleging slander per se. The defendant moves for summary judgment as to this count on the ground that any statements regarding the plaintiff were privileged, and alternatively, that it did not make public any statements regarding the plaintiff.
Defendant concedes that the tort of invasion of privacy was recognized by our Superior Court in Goodman v. WaterburyRepublican-American Inc., 188 Conn. 107, 128 (1982).
In order to establish invasion of privacy by false light, the plaintiff must show (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Jonap v. Silver, 1 Conn. App. 550,557-58 (1984).
In Walters v. Homestaff Health Care, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 146961 (February 8, 1996, Tobin, J.) the court stated:
 The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.
 To satisfy the element of publicity under an invasion of privacy by false light claim, the plaintiff must show that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge, thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to CT Page 2000 a single person or even to a small group of persons.
Plaintiff's allegations appear to be sufficient with respect to the elements of this tort. Because there is a question of motive and intent in determining privilege and the defendant has failed to provide sufficient concrete evidence to demonstrate the absence of any genuine issue of material fact, the defendant's motion for summary judgment as this count must fail.
For the foregoing reasons, the motion for summary judgment is denied as to counts one, two, three, seven, and ten, and granted as to counts five, six and eight.
Jerry Wagner Judge Trial Referee