## C. R. KLEWIN, INC. *v.* FLAGSHIP PROPERTIES, INC., ET AL.
### (14322)

PETERS, C. J., SHEA, GLASS, COVELLO and BERDON, Js.

Argued October 1—decision released December 10, 1991

*Daniel S. Blinn,* with whom, on the brief, was *Louis R. Pepe,* for the appellant (plaintiff).

*A. Susan Peck,* with whom was *Hope C. Seeley,* for the appellees (defendants).

PETERS, C. J. The sole question before us in this certified appeal is whether the provision of the statute of

frauds, General Statutes § 52-550 (a) (5),[1] requiring a writing for an "agreement that is not to be performed within one year from the making thereof," renders unenforceable an oral contract that fails to specify explicitly the time for performance when performance of that contract within one year of its making is exceedingly unlikely. This case comes to this court upon our grant of an application for certification from the United States Court of Appeals for the Second Circuit pursuant to General Statutes § 51-199a.[2] *C. R. Klewin, Inc.* v. *Flagship Properties, Inc.*, 936 F.2d 684 (2d Cir. 1991).

The Second Circuit has provided us with the following facts. See id., 685–86. The plaintiff, C. R. Klewin, Inc. (Klewin), is a Connecticut based corporation that provides general construction contracting and construction management services. The defendants, Flagship Properties and DKM Properties (collectively Flagship), are engaged in the business of real estate development; although located outside Connecticut, they do business together in Connecticut under the trade name Conn-Tech.

---

[1] General Statutes § 52-550 provides in pertinent part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (5) upon any agreement that is not to be performed within one year from the making thereof . . . ."

[2] General Statutes § 51-199a provides in pertinent part: "(b) The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

Flagship became the developer of a major project (ConnTech Project) in Mansfield, near the University of Connecticut's main campus. The master plan for the project included the construction of twenty industrial buildings, a 280 room hotel and convention center, and housing for 592 graduate students and professors. The estimated total cost of the project was $120 million.

In March, 1986, Flagship representatives held a dinner meeting with Klewin representatives. Flagship was considering whether to engage Klewin to serve as construction manager on the ConnTech Project. During the discussions, Klewin advised that its fee would be 4 percent of the cost of construction plus 4 percent for its overhead and profit. This fee structure was, however, subject to change depending on when different phases of the project were to be constructed. The meeting ended with Flagship's representative shaking hands with Klewin's agent and saying, "You've got the job. We've got a deal." No other specific terms or conditions were conclusively established at trial. The parties publicized the fact that an agreement had been reached and held a press conference, which was videotaped. Additionally, they ceremoniously signed, without filling in any of the blanks, an American Institute of Architects Standard Form of Agreement between Owner and Construction Manager.

Construction began May 4, 1987, on the first phase of the ConnTech Project, called Celeron Square. The parties entered into a written agreement regarding the construction of this one part of the project. Construction was fully completed by the middle of October, 1987. By that time, because Flagship had become dissatisfied with Klewin's work, it began negotiating with other contractors for the job as construction manager on the next stage of the ConnTech Project. In March, 1988,

Flagship contracted with another contractor to perform the sitework for Celeron Square II, the next phase of the project.

After having been replaced as construction manager, Klewin filed suit in the United States District Court for the District of Connecticut, claiming (1) breach of an oral contract to perform as construction manager on all phases of the project; (2) quantum meruit recovery for services performed in anticipation of future stages of the project; and (3) detrimental reliance on Flagship's promise to pay for preconstruction services. Flagship moved for summary judgment, claiming, inter alia, that enforcement of the alleged oral contract was barred by the statute of frauds. The district court granted summary judgment, reasoning that (1) "the contract was not of an indefinite duration or open-ended" because full performance would take place when all phases of the ConnTech Project were completed, and (2) the contract "as a matter of law" could not possibly have been performed within one year. In drawing this second conclusion, the court focused on the sheer scope of the project and Klewin's own admission that the entire project was intended to be constructed in three to ten years.

Klewin appealed to the United States Court of Appeals for the Second Circuit. The Court of Appeals held that "the issues presented involve substantial legal questions for which there is no clear precedent under the decisions of the Connecticut Supreme Court"; id., 686; and certified to this court the following questions:[3]

"A. Whether under the Connecticut Statute of Frauds, Conn. Gen. Stat. § 52-550 (a) (5), an oral contract that fails to specify explicitly the time for per-

---

[3] These certified questions do not involve the question, which these facts raise, of whether the alleged oral contract was too vague to be enforceable. See *Dunham* v. *Dunham,* 204 Conn. 303, 313, 528 A.2d 1123 (1987).

formance is a contract of 'indefinite duration,' as that term has been used in the applicable Connecticut precedent, and therefore outside of the Statute's proscriptions?

"B. Whether an oral contract is unenforceable when the method of performance called for by the contract contemplates performance to be completed over a period of time that exceeds one year, yet the contract itself does not explicitly negate the possibility of performance within one year?"[4] Id., 685. We answer "yes" to the first question, and "no" to the second.

## I

The Connecticut statute of frauds has its origins in a 1677 English statute entitled "An Act for the preven-

---

[4] Flagship objected to our acceptance of the first question as framed by the Second Circuit, arguing that Connecticut case law does not require that all contracts be for a definite duration in order for the statute of frauds to apply. It cited *Burkle* v. *Superflow Mfg. Co.*, 137 Conn. 488, 493, 78 A.2d 698 (1951), in which we said that the contract was "for an indefinite and indeterminable time in the future," yet held it within the statute of frauds. Flagship proposed that the following two questions be substituted for the first:

"1. Whether under the Connecticut Statute of Frauds, Conn. Gen. Stat. § 52-550 (a) (5), an oral contract that fails to specify explicitly the time for performance but would end upon completion of the Project, is a contract of 'indefinite duration'?

"2. Whether under the Connecticut Statute of Frauds, Conn. Gen. Stat. § 52-550 (a) (5), all oral contracts of indefinite duration are outside of the Statute's proscriptions or only those oral contracts of indefinite duration for personal services?"

We overruled the objection and accepted the questions as framed by the Second Circuit. It will, however, be clear from our opinion that the answer to the first of the questions proposed by Flagship is "yes." The answer to the second of these questions is that all oral contracts of indefinite duration, whether or not for personal services, are excluded. In *Burkle,* the defendant agreed to supply plumbing equipment to the plaintiffs and to deliver within thirty days all orders procured by them. Such a contract, we held, " 'is presumably intended to be permanent and perpetual in the obligation it imposes.' " Id., 496. Notwithstanding the opinion's use of the word "indefinite," a perpetual contract is not the same as an indefinite contract.

tion of Fraud and Perjuries." See 6 W. Holdsworth, A History of English Law (1927) pp. 379–84. The statute appears to have been enacted in response to developments in the common law arising out of the advent of the writ of assumpsit, which changed the general rule precluding enforcement of oral promises in the King's courts. Thereafter, perjury and the subornation of perjury became a widespread and serious problem. Furthermore, because juries at that time decided cases on their own personal knowledge of the facts, rather than on the evidence introduced at trial, a requirement, in specified transactions, of "some memorandum or note . . . in writing, and signed by the party to be charged" placed a limitation on the uncontrolled discretion of the jury. See 2 A. Corbin, Contracts (1950) § 275, pp. 2–3; 6 W. Holdsworth, supra, pp. 387–89; An Act for Prevention of Fraud and Perjuries, 29 Car. 2, c. 3, § 4 (1677), quoted in J. Perillo, "The Statute of Frauds in the Light of the Functions and Dysfunctions of Form," 43 Fordham L. Rev. 39, 39 n.2 (1974). Although the British Parliament repealed most provisions of the statute, including the one-year provision, in 1954; see The Law Reform (Enforcement of Contracts) Act, 2 & 3 Eliz. 2, c. 34 (1954); the statute nonetheless remains the law virtually everywhere in the United States.[5]

Modern scholarly commentary has found much to criticize about the continued viability of the statute of frauds. The statute has been found wanting because it serves none of its purported functions very well; see J. Perillo, supra; and because it permits or compels economically wasteful behavior; see M. Braunstein, "Remedy, Reason, and the Statute of Frauds: A Critical Economic Analysis," 1989 Utah L. Rev. 383. It is, however, the one-year provision that is at issue in this case

---

[5] "The one-year provision has been omitted in North Carolina and Pennsylvania." 2 E. Farnsworth, Contracts (2d Ed. 1990) § 6.4, p. 110 n.5.

that has caused the greatest puzzlement among commentators. As Professor Farnsworth observes, "of all the provisions of the statute, it is the most difficult to rationalize.

"If the one-year provision is based on the tendency of memory to fail and of evidence to go stale with the passage of time, it is ill-contrived because the one-year period does not run from the making of the contract to the proof of the making, but from the making of the contract to the completion of performance. If an oral contract that cannot be performed within a year is broken the day after its making, the provision applies though the terms of the contract are fresh in the minds of the parties. But if an oral contract that can be performed within a year is broken and suit is not brought until nearly six years (the usual statute of limitations for contract actions) after the breach, the provision does not apply, even though the terms of the contract are no longer fresh in the minds of the parties.

"If the one-year provision is an attempt to separate significant contracts of long duration, for which writings should be required, from less significant contracts of short duration, for which writings are unnecessary, it is equally ill-contrived because the one-year period does not run from the commencement of performance to the completion of performance, but from the making of the contract to the completion of performance. If an oral contract to work for one day, 13 months from now, is broken, the provision applies, even though the duration of performance is only one day. But if an oral contract to work for a year beginning today is broken, the provision does not apply, even though the duration of performance is a full year." 2 E. Farnsworth, Contracts (2d Ed. 1990) § 6.4, pp. 110–11; see also *Goldstick* v. *ICM Realty*, 788 F.2d 456, 464 (7th Cir. 1986); *D & N Boening, Inc.* v. *Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 454, 472 N.E.2d 992,

483 N.Y.S.2d 164 (1984); 1 Restatement (Second), Contracts (1979) § 130, comment a; J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 19-18, p. 807.[6]

Historians have had difficulty accounting for the original inclusion of the one-year provision.[7] Some years after the statute's enactment, one English judge stated that "the design of the statute was, not to trust to the memory of witnesses for a longer time than one year." *Smith* v. *Westall*, 1 Ld. Raym. 316, 317, 91 Eng. Rep. 1106, 1107 (1697). That explanation is, however, unpersuasive, since, as Farnsworth notes, the language of the statute is ill suited to this purpose. One eminent historian suggested that because such contracts are continuing contracts, it might be very difficult to give evidence of their formation, inasmuch as the rules of evidence of that time prohibited testimony by the parties to an action or any person who had an interest in the litigation. 6 W. Holdsworth, supra, p. 392. That argument, however, proves too much, since it would apply equally to all oral contracts regardless of the duration of their performance. The most extensive recent study of the history of English contract law offers plausible explanations for all of the other provisions, but acknowledges that this one is "curious." A. Simpson, A History of the Common Law of Contract (1975) p. 612. More recently, it has been suggested that the provision "may have been intended to prevent oral perjury in actions of assumpsit against customers who had

---

[6] Even the statute's most notable defender chose not to mention the one-year provision when he contended that the statute is "in essence better adapted to our needs than when it was first passed." K. Llewellyn, "What Price Contract? An Essay in Perspective," 40 Yale L.J. 704, 747 (1931).

[7] The language of the original English statute was nearly identical to that of the provision we are now considering, including "any agreement that is not to be performed within the space of one year from the making thereof." An Act for Prevention of Frauds and Perjuries, 29 Car. 2, c. 3, § 4 (5) (1677), quoted in J. Perillo, "The Statute of Frauds in the Light of the Functions and Dysfunctions of Form," 43 Fordham L. Rev. 39, 39 n.2 (1974).

forgotten the details of their purchases." P. Hamburger, "The Conveyancing Purposes of the Statute of Frauds," 27 Am. J. Leg. Hist. 354, 376 n.85 (1983).

In any case, the one-year provision no longer seems to serve any purpose very well, and today its only remaining effect is arbitrarily to forestall the adjudication of possibly meritorious claims. For this reason, the courts have for many years looked on the provision with disfavor, and have sought constructions that limited its application. See, e.g., *Landes Construction Co.* v. *Royal Bank of Canada,* 833 F.2d 1365, 1370 (9th Cir. 1987) (noting policy of California courts "of restricting the application of the statute to those situations precisely covered by its language"); *Cunningham* v. *Healthco, Inc.,* 824 F.2d 1448, 1455 (5th Cir. 1987) (one-year provision does not apply if the contract "conceivably" can be performed within one year); *Hodge* v. *Evans Financial Corporation,* 823 F.2d 559, 561 (D.C. Cir. 1987) (statute of frauds "has long been construed narrowly and literally"); *Goldstick* v. *ICM Realty,* supra, 464 ("Courts tend to take the concept of 'capable of full performance' quite literally . . . because they find the one-year limitation irksome.").

## II

Our case law in Connecticut, like that in other jurisdictions, has taken a narrow view of the one-year provision of the statute of frauds now codified as § 52-550 (a) (5). In *Russell* v. *Slade,* 12 Conn. 455, 460 (1838), this court held that "it has been repeatedly adjudged, that unless it appear *from the agreement itself,* that it is *not* to be performed within a year, the statute does not apply. . . . The statute of frauds plainly means an agreement *not* to be performed within the space of a year, and *expressly* and *specifically* so agreed. A *contingency* is not within it; nor any case that *depends upon contingency.* It does *not* extend to cases

where the thing only *may* be performed within the year." (Emphases in original; citation and internal quotation marks omitted.)

A few years later, in *Clark* v. *Pendleton,* 20 Conn. 495, 508 (1850), the statute was held not to apply to a contract that was to be performed following a voyage that both parties expected to take one and one-half years. "It is not alleged in any form, that it was made with reference to, or that its performance was to depend on the termination of a voyage which would necessarily occupy that time. It is only alleged, that it was expected by the parties, that the defendant would be absent for the period of eighteen months. But this expectation, which was only an opinion or belief of the parties, and the mental result of their private thoughts, *constituted no part of the agreement itself;* nor was it connected with it, so as to explain or give a construction to it, although it naturally would, and probably did, form one of the motives which induced them to make the agreement. The thing thus anticipated did not enter into the contract, *as one of its terms;* and according to it, as stated, the defendant, whenever he should have returned, after having embarked on the voyage, whether before or after the time during which it was thus expected to continue, would be under an obligation to perform his contract with the plaintiff. As it does not therefore *appear, by its terms, as stated,* that it was not to be performed within a year from the time when it was made, it is not within the statute." (Emphases added.)

In this century, in *Appleby* v. *Noble,* 101 Conn. 54, 57, 124 A. 717 (1924), this court held that " '[a] contract is not within this clause of the statute unless *its terms are so drawn* that it cannot by any possibility be performed fully within one year.' " (Emphasis added.) In *Burkle* v. *Superflow Mfg. Co.,* 137 Conn. 488, 492–93, 78 A.2d 698 (1951), we delineated the line that

separates contracts that are within the one-year provision from those that are excluded from it. "Where *the time for performance is definitely fixed at more than one year,* the contract is, of course, within the statute. . . . If no time is *definitely fixed* but full performance may occur within one year through the happening of a contingency upon which the contract depends, it is not within the statute." (Emphases added; citations omitted.)

More recently, in *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 197, 520 A.2d 208 (1987), we stated that " '[u]nder the prevailing interpretation, the enforceability of a contract under the one-year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded; the provision covers *only* those contracts whose performance *cannot possibly* be completed within a year.' (Emphasis added.) 1 Restatement (Second), Contracts, [§ 130, comment a] . . . ."

In light of this unbroken line of authority, the legislature's decision repeatedly to reenact the provision in language virtually identical to that of the 1677 statute suggests legislative approval of the restrictive interpretation that this court has given to the one-year provision. "[T]he action of the General Assembly in re-enacting the statute, including the clause in question . . . is presumed to have been done in the light of those decisions." *Turner* v. *Scanlon,* 146 Conn. 149, 156, 148 A.2d 334 (1959); see also *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439–40, 525 A.2d 91 (1987).

III

Bearing this history in mind, we turn to the questions certified to us by the federal court. Our case law makes no distinction, with respect to exclusion from

the statute of frauds, between contracts of uncertain or indefinite duration and contracts that contain no express terms defining the time for performance. The two certified questions therefore raise only one substantive issue. That issue can be framed as follows: in the exclusion from the statute of frauds of all contracts except those "whose performance cannot possibly be completed within a year"; (emphasis omitted) *Finley v. Aetna Life & Casualty Co.,* supra, 197; what meaning should be attributed to the word "possibly"? One construction of "possibly" would encompass only contracts whose completion within a year would be inconsistent with the express terms of the contract. An alternate construction would include as well contracts such as the one involved in this case, in which, while no time period is expressly specified, it is (as the district court found) realistically impossible for performance to be completed within a year. We now hold that the former and not the latter is the correct interpretation. "The critical test . . . is whether 'by its terms' the agreement is not to be performed within a year," so that the statute will not apply where "the alleged agreement contain[s] [no] provision which directly or indirectly regulated the time for performance." *Freedman v. Chemical Construction Corporation,* 43 N.Y.2d 260, 265, 372 N.E.2d 12, 401 N.Y.S.2d 176 (1977). "It is the law of this state, as it is elsewhere, that a contract is not within this clause of the statute unless *its terms are so drawn that* it cannot by any possibility be performed fully within one year." (Emphasis added.) *Burkle v. Superflow Mfg. Co.,* supra, 492.

Flagship contends, to the contrary, that the possibility to which this court referred in *Burkle* must be a reasonable possibility rather than a theoretical possibility. It is true that in *Burkle* this court rejected the argument that "since all the members of a partnership [that was a party to the contract] may possibly die

within a year, the contract is not within the statute."
We noted that "[n]o case has come to our attention
where the rule that the possibility of death within a year
removes a contract from the statute has been extended
to apply to the possibility of the death of more than
one individual." Id., 494. In *Burkle,* however, we
merely refused to extend further yet another of the
rules by which the effect of the provision has been
limited. *Burkle* did not purport to change the well estab-
lished rule of narrow construction of the underlying
one-year provision.

Most other jurisdictions follow a similar rule requir-
ing an express contractual provision specifying that
performance will extend for more than one year. Only
"[a] few jurisdictions, contrary to the great weight of
authority . . . hold that the intention of the parties
may put their oral agreement within the operation of
the Statute." 3 S. Williston, Contracts (3d Ed. W. Jae-
ger 1960) § 495, pp. 584–85. In "the leading case on
this section of the Statute"; id., p. 578; the Supreme
Court of the United States undertook an extensive sur-
vey of the case law up to that time and concluded that
"[i]t . . . appears to have been the settled construc-
tion of this clause of the statute in England, before the
Declaration of Independence, that an oral agreement
which, according to the intention of the parties, *as
shown by the terms of the contract,* might be fully per-
formed within a year from the time it was made, was
not within the statute, although the time of its perform-
ance was uncertain, and might probably extend, and
be expected by the parties to extend, and did in fact
extend, beyond the year. The several States of the
Union, in reenacting this provision of the statute of
frauds in its original words, must be taken to have
adopted the known and settled construction which it
had received by judicial decisions in England." (Empha-
sis added.) *Warner* v. *Texas & Pacific R. Co.,* 164 U.S.

418 422-23, 17 S. Ct. 147, 41 L. Ed. 495 (1896). The agreement at issue was one in which a lumbermill agreed to provide grading and ties and the railway agreed to construct rails and a switch and maintain the switch as long as the lumbermill needed it for shipping purposes. Although the land adjoining the lumbermill contained enough lumber to run a mill for thirty years, and the lumbermill used the switch for thirteen years, the court held that the contract was not within the statute. "The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, *according to the reasonable interpretation of its terms*, required that it should not be performed within the year." (Emphasis added.) Id., 434; see also *Walker* v. *Johnson*, 96 U.S. 424, 427, 24 L. Ed. 834 (1877); *McPherson* v. *Cox*, 96 U.S. 404, 416-17, 24 L. Ed. 746 (1877).

Because the one-year provision "is an anachronism in modern life . . . we are not disposed to expand its destructive force." *Farmer* v. *Arabian American Oil Co.*, 277 F.2d 46, 51 (2d Cir. 1960). When a contract contains no express terms about the time for performance, no sound reason of policy commends judicial pursuit of a collateral inquiry into whether, at the time of the making of the contract, it was realistically possible that performance of the contract would be completed within a year.[8] Such a collateral inquiry would not only expand the "destructive force" of the statute

---

[8] In this case, one of the issues before the Second Circuit was whether there was a genuine issue of material fact as to whether the oral agreement could have been performed within a year.

by extending it to contracts not plainly within its terms, but would also inevitably waste judicial resources on the resolution of an issue that has nothing to do with the merits of the case or the attainment of a just outcome.[9] See 2 A. Corbin, supra, § 275, p. 14 (the statute "has been in part the cause of an immense amount of litigation as to whether a promise is within the statute or can by any remote possibility be taken out of it. This latter fact is fully evidenced by the space necessary to be devoted to the subject in this volume and by the vast number of cases to be cited").

We therefore hold that an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like

---

[9] We recognize, as Flagship observed at oral argument, that comment a to § 130 of the Restatement (Second) of Contracts (1979), upon which we relied in *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 197, 520 A.2d 208 (1987), includes an illustration that is inconsistent with the result that we are reaching today. Contrary to illustration 3 (which is drawn from *Warner* v. *Texas & Pacific R. Co.*, 164 U.S. 418, 17 S. Ct. 147, 41 L. Ed. 495 (1896), the facts of which are summarized in the text above), which supports our holding, illustration 4 states: "A orally promises B to sell him five crops of potatoes to be grown on a specified farm in Minnesota, and B promises to pay a stated price on delivery. The contract is within the Statute of Frauds. It is impossible in Minnesota for five crops of potatoes to mature in one year." The illustration is adapted from illustration 11 to § 198 of the Restatement (First) of Contracts (1928), which does not include case citations. The Restatement (Second) supports the illustration by citing *Adams* v. *Big Three Industries, Inc.*, 549 S.W.2d 411 (Tex. Civ. App. 1977). The *Adams* court held that "when no time for performance has been specified, a 'reasonable time' will be implied, and what is a reasonable time must be determined from all the circumstances, the situation of the parties, and the subject matter of the contract. . . . Where an agreement, by its terms or the nature of the performance required, cannot be performed within one year, it necessarily comes within the purview of the statute. . . . If, as here, the contract is not a written one and depends upon disputed facts, the determination of what constitutes a reasonable time is a question of fact." (Citations omitted.) Id., 414–15. In our view, illustration 3 more closely represents the law of this state.

a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take.

The first certified question is answered "yes." The second certified question is answered "no."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.