[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This application for prejudgment remedy was brought by the plaintiff, Michael Weinshel, pursuant to General Statutes § 52-278d[1] against the defendants, Capossela, Cohen, Engelson Colman, P.C. (Capossela) and certain individual shareholders of Capossela, based upon a purported buy-out agreement entered into between the plaintiff and the defendants. The plaintiff seeks a prejudgment attachment in the amount of $600,000 based upon such agreement, while the defendants assert that no probable cause exists to support an attachment, and, in the alternative, that the remedy be limited to the amount of $100,000. The plaintiff has filed a complaint in nine counts, however, he has based his application for prejudgment remedy solely upon the alleged existence of a buy-out agreement.
"In considering an application for a prejudgment remedy the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . . The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to support the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues. . . . In addition, the trial court has the responsibility, after the adversarial evidentiary hearing, to consider not only the validity of the claim but also the amount being sought." Giordano v. Giordano, 39 Conn. App. 183,206, 664 A.2d 1136 (1995). "Civil probable cause constitutes a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." Tyler v. Schnabel,34 Conn. App. 216, 220-21, 641 A.2d 388 (1994). CT Page 5114-OO
The plaintiff bases his claim upon an unsigned buy-out agreement which he claims has been in use at Capossela since March 1, 1984, through his date of termination in late 1994. As evidence of this, the plaintiff has produced an unsigned copy of the agreement dated in 1992. The plaintiff was hired by Capossela in June of 1971, and subsequently became a shareholder in 1974, owning between nineteen and twenty percent of the corporation. The plaintiff testified that the formula used in the unsigned buy-out agreement has remained the same, and has been used by Capossela up to fourteen times. However, the defendants presented evidence that many shareholders left the corporation under terms different from that set forth in the formula in the unsigned agreement. There was also testimony that the plaintiff attempted to obtain the consent of the other shareholders to the agreement, but those shareholders consistently refused to sign the agreement. The plaintiff acknowledges in his brief that "when the principals initially began discussing buy-out of the plaintiff, the buy-out agreementwas used as a reference point."
The plaintiff argues that the agreement is binding, even though unsigned, and not subject to the statute of frauds because it is a contract that could be performed within one year. The plaintiff further maintains that part performance and equitable estoppel remove the agreement from the statute of frauds. The defendants argue that General Statutes § 42a-8-319 requires such a buy-sell agreement to be in writing and executed to be enforceable.
"Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements."Dunham v. Dunham, 204 Conn. 303, 313, 528 A.2d 1123 (1987). "[A]n oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statutes of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take." C.R. Klewin, Inc. v. Flagship Properties, Inc.,220 Conn. 569, 583-84, 600 A.2d 772 (1991). The terms of the unsigned agreement do not provide a specified duration, therefore, if this agreement is a representation of an oral contract it is not subject to the statute of frauds. Therefore, it is not necessary for this court to address the plaintiff's CT Page 5114-PP arguments regarding part performance and estoppel.
The defendants contend that this issue involves the sale of the plaintiff's shares in the corporation, thus, it is barred by the statute of frauds as stated in General Statutes § 42a-8-319.[2] The defendants have presented authority from other states, interpreting this provision of the UCC such that stock in a closely held corporation falls within this provision. Connecticut has yet to so define § 42a-8-319.
It is not necessary to determine whether the alleged agreement falls within the strictures of the UCC, as the evidence presented at the prejudgment remedy hearing tends to show that the alleged agreement relied on by the plaintiff does not represent an oral agreement between the principals of the corporation. Michael Jelormine testified that the alleged agreement did not represent an agreement of the shareholders, that the alleged agreement was typed by the plaintiff's wife, and that other shareholders left the corporation on terms other than those expressed in the alleged agreement. The alleged agreement was not signed by any of the shareholders listed. Evidence was also presented that the shareholders held annual retreats, at which the alleged buy-out agreement was routinely on the agenda, however, it was never signed by the shareholders. The facts also demonstrate that five to seven shareholders left since the late seventies, and many of them were not paid in accordance with the formula as set out in the alleged agreement. The weight of evidence presented at the hearing shows that it was the practice of the corporation to negotiate a buy-out when individuals left, rather than pay them according to a predetermined formula. For these reasons and that based upon the evidence presented at the hearing, there is no probable cause for the court to issue an attachment on the defendants. Accordingly, the plaintiff's application for a prejudgment attachment is denied.
The plaintiff has also argued that the individual defendants are liable based upon the doctrine of piercing the corporate veil. Even had the plaintiff presented sufficient evidence to satisfy the elements of the doctrine, there is still no probable cause to support an attachment based upon the evidence presented.
"Under Connecticut law, the corporate veil may be pierced under either the `instrumentality' or `identity' rules. Under CT Page 5114-QQ the instrumentality rule, in any case but that of express agency, proof of three elements is required: (1) Control, not mere majority or complete stock control, but complete domination, not only of the finances but of the policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Internal quotation marks omitted.) United Electrical Contractors, Inc. v. ProgressBuilders, Inc., 26 Conn. App. 749, 755-56, 603 A.2d 1190 (1992). The plaintiff has not contended the identity rule applies to the present situation.
The plaintiff argues that because the name of Capossela was changed to C.C.E. C., and a new entity formed, named Capossela, Cohen, LLC, without notice to the plaintiff, who remains a shareholder, the defendants have violated the instrumentality rule. The plaintiff has not provided sufficient evidence on control, or whether that control was used to injure the plaintiff, to justify piercing the corporate veil for the purposes of attachment. Accordingly, the plaintiff's application for a prejudgment remedy against the individual defendants is also denied.
BY THE COURT,
GROGINS, JUDGE