[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 8, 9 and 11, 1997, hearings were held in the above matters before the undersigned judge. The parties have agreed that the evidence presented at these hearings should be considered in connection with the pending motions in both matters. I have reviewed the full record, evaluated the testimony of the witnesses, and considered all of the written submissions of counsel. I have also considered the oral arguments made by counsel. These matters are now ready for decision.
 1. Ellington Drywall, Inc. v. Janice A. Gerrow, Docket Number CV960566225S:
In this matter, pursuant to a January 13, 1997, motion, Janice Gerrow has moved to dissolve the attachment which the parties previously agreed to. For the following reasons, the motion is denied.
The November 14, 1996, complaint initiating this matter alleges that on or about July 17, 1996, Ellington Drywall, Inc. lent $25,000 to Janice Gerrow, and that Janice Gerrow has refused to return this money although demand has been made. CT Page 5141
General Statutes Section 52-278d establishes the legal framework for the probable cause hearing held in this case. As plaintiff notes in its March 10, 1997 brief in opposition, our courts have repeatedly held that probable cause hearings are not intended to be "a trial on the merits but rather requires the court to determine probable success by weighing probabilities."Michael Papa Associates v. Julian, 178 Conn. 446, 447 (1979). The court must determine, based on the full record and its assessment of the testimony, whether a plaintiff has met its burden of showing probable cause to sustain the validity of its claim.Greenberg, Rhein Margolis, Inc. v. Norris-Faye HortonEnterprise, Inc., 218 Conn. 162 (1991). Probable cause, as plaintiff notes, is a flexible, common sense standard. "It does not demand that a belief be correct or more likely true than false . . . The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim . . . The court determines probable cause by weighing probabilities." New England Land Co. v. DeMarkey,213 Conn. 612, 620 (1990). As our Supreme Court noted in Three S.Development Co. v. Santore, 193 Conn. 174, 175 (1984), citingWall v. Toomey, 52 Conn. 35, 36 (1884), "The legal idea of probable cause is a bona fide belief in existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." The weighing of probabilities in which the court must engage applies "not only to the factual but the legal issues." Babiarz vs. Hartford Special, Inc.,2 Conn. App. 388, 393 (1984).
Applying these legal standards in light of the testimony produced at the hearing, I conclude that the motion to dissolve the attachment should be denied because plaintiff has met this broad, flexible probable cause standard. Tanya Tiffany Rhea, one of Janice Gerrow's daughters, testified, among other things, that after the purchase of the property at 157 King Street, East Hartford, her mother indicated on more than one occasion that she was prepared to go to a lawyer to sign a document acknowledging the need to return $25,000 to Gerald Levasseur, Sr., vice president and secretary of Ellington Drywall, testified that his father, Gerald Levasseur, Sr., was authorized to run the business and authorize loans on behalf of the business. Rebecca Lynn Rudeen, also a daughter of Janice Gerrow, testified that she was present when her mother and Gerald Levasseur, Sr., discussed buying a house on Burnside Avenue as an investment, prior to the CT Page 5142 purchase of the subject property at 157 King Street. Gerald Levasseur, Sr., testified about his control of Ellington Drywall, testified that he decided to borrow $25,000 from Ellington Drywall to assist in the purchase of the King Street property, and that he never intended to give the money to Janice Gerrow as a gift. He testified that Janice Gerrow was supposed to sign a document evidencing the fact that she had to pay back the $25,000 loan, but that she never did so. Plaintiff's Exhibit 2 was introduced, evidencing the wire transfer of $25,000 from the account of Ellington Drywall to Janice Gerrow, in connection with the closing on the King Street Property. The above testimony, as well as other testimony and evidence, was presented in the context of a personal relationship between Janice Gerrow and Gerald Levasseur, Sr., which terminated under less than happy circumstances.
Defendant makes essentially three arguments in support of its motion to dissolve, none of which are persuasive.
First, defendant argues that the $25,000 was a gift, not a loan. The burden of proving the essential elements of a gift rests on the party claiming the gift. Kriedel v. Krampitz,137 Conn. 532, 534 (1951). To constitute a valid gift, there must be not only delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately. Bergen v. Bergen, 177 Conn. 53, 56-57 (1979). Janice Gerrow testified that she considered the $25,000 to be a gift, not a loan. However, as noted above, contrary testimony was also presented. A final determination on this issue will have to await a full trial on the merits. Given the limited nature of the probable cause inquiry, this argument must fail.
Secondly, defendant argues that the informality of the procedures surrounding the purported loan — including the lack of any formal corporate documents or resolutions authorizing the loan — are dispositive. However, the evidence is sufficient to support the conclusion, notwithstanding the clear lack of formalities, that Gerald Levasseur, Sr., was, to some degree, the alter ego of Ellington Drywall, a small family business, and that he had the authority to utilize the funds of Ellington Drywall for the purposes of making the purported loan. Once again, I conclude that, given the limited nature of the probable cause inquiry required, defendant's argument fails.
Third, defendant argues that the loan is ineffective because CT Page 5143 it is not evidence by a writing, as required by the Statute of Frauds, General Statutes Section 52-550.[1] Defendant cites to numerous cases which stand for the proposition that no exception to the Statute of Frauds applies. Plaintiff responds by contending that exceptions to the Statute of Frauds may well apply.
Preliminarily, I have concluded that, depending on how one chooses to view the evidence, it is not unambiguously clear that the Statute of Frauds applies in the first instance. Whether the $25,000 transfer was a loan, as Ellington Drywall alleges, or a gift, as Janice Gerrow contends, is the very issue in dispute. If viewed as a loan to Janice Gerrow, one possible, reasonable view of the evidence, the Statute of Frauds might not apply. It is therefore possible to view the evidence as evidencing a loan for $25,000 which falls outside the purview of Sections 52-550 (4), and certainly and 52-550 (6). See, e.g., Hall v. Solomon,61 Conn. 476, 483 (1892) ("An agreement for the sale of real estate contemplates a transfer of some portion of the title.") But even assuming that the prohibitions of Section 52-550 do apply, exceptions to the Statute of Frauds exist which could, in the view of a trier on a full record, apply. These might include, but are not necessarily limited to, contracts of indefinite duration,Finley v. Aetna Life and Casualty Co., 202 Conn. 190, 197-198
(1987); instances in which a party has fully performed his part of the agreement, Lee v. Jenkins Bros., 268 F.2d 357 (2d Cir. 1959) and Breen v. Phelps, 186 Conn. 86 (1982); and agreements that can be performed within one year from the making thereof,C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. 569,577-584 (1991). Given all of the facts and circumstances presented in the case, I conclude that defendant's arguments in reliance upon the Statute of Frauds do not require the motion to dissolve to be granted. The testimony of the witnesses at the hearing, considered in light of the full record, is sufficient to persuade me that plaintiff has met its "probable cause" burden with respect to the allegations made in the complaint.
 2. Janice Gerrow, Petitioner v. Ellington Drywall, Inc., Respondent, Docket No. CV960566339S:
Pending in this matter is the application of the petitioner, Janice Gerrow, for discharge or reduction of mechanic's lien dated November 26, 1996. This matter, in the view of the undersigned judge, brings into focus the inherent tension between the broad remedial purposes of the mechanic's lien law, and the broad remedial purposes of Connecticut's Home Improvement Act, CT Page 5144 Connecticut General Statutes Section 20-418 et seq. For the reasons stated below, the petition for discharge of mechanic's lien is granted.
Initially, it should be noted that pursuant to General Statutes Section 49-35b, upon a hearing for discharge or reduction of a mechanic's lien:
 . . . the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. Any person entitled to notice under section 49-35a may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or the amount of the lien is excessive and should be reduced.[2]
At the hearing, as noted above, facts were introduced into evidence tending to show that Janice Gerrow and Gerald Levasseur, Sr., were involved in a personal relationship which terminated at some point, leaving ill will between them. The parties also entered into a stipulation of facts, dated April 11, 1997, which provides as follows:
 1. Ellington Drywall claims $51,000 from Janice Gerrow for work performed on 157 King Street, East Hartford, CT.
 2. Said work was performed between the dates of 7/17/96 and 9/25/96.
 3. At all times that said work was performed the only record owner of 157 King Street was Janice Gerrow.
 4. Ellington Drywall is licensed in the State of Connecticut to perform home improvements.
 5. There is no writing or written agreement between Ellington Drywall and Janice Gerrow that sets forth the work done, the price to be paid for the work, the starting date for the work, the finishing date for the work or the method of payment. There is no writing or written agreement between any parties concerning the work performed by Ellington Drywall on the 157 King Street Property.
 6. The home improvements were done with Janice Gerrow's knowledge. CT Page 5145
 7. Ellington Drywall has received no compensation from Janice Gerrow for said home improvement work.
Respondent urges the court to deny the application, in reliance on the liberal construction given to our mechanic's lien law, in order to implement the important remedial purpose of furnishing security for one who provides services or materials.Nichel Mine Brook Associates v. Joseph E. Sakal, P.C.,217 Conn. 361, 364 (1991). Respondent also urges the Court to eschew consideration of the Home Improvement Act entirely; and, if the act is considered, to adopt a flexible reading of the Act to avoid what it claims will be an unjust result.
Petitioner argues that notwithstanding the limited nature of the inquiry upon an application to discharge a mechanic's lien and the remedial purposes of our mechanic's lien law, the Home Improvement Act must be considered at this stage of the proceedings, and that consideration of the Act, on the present record, requires that the application for discharge be granted.
Initially, I reject respondent's contention that the Court should not consider the petitioner's arguments based on the Home Improvement Act. I agree with petitioner's argument, see page three of its April 18, 1997, Plaintiff's Response to Specific Inquiries Posed by the Court, that the Court is required to consider defenses to the lien as part of its analysis in this case. Section 49-35b, by its very terms, requires the Court to act upon "consideration of the facts before it . . ." based upon an initial "probable cause" determination. This "probable cause" standard is the same as that required under the prejudgment remedy statute, Section 52-278a et seq.. For the purposes of determining probable cause for a prejudgment remedy, the Court properly considers both a plaintiff's claims and a defendant's defenses. Haxhi v. Moss, 25 Conn. App. 16 (1991). In evaluating whether it has been shown by "clear and convincing evidence" pursuant to Section 49-35b that the validity of a lien should not be sustained, there is no basis to conclude, in the statutes or the case law, that the Court should ignore clearly applicable legal defenses. This is particularly true in light of the remedial purposes of the Home Improvement Act. For the Court to ignore analysis of such a defense, even on the limited record of a mechanic's lien hearing, would deprive a defendant seeking to make use of the Home Improvement Act of an early, meaningful opportunity to challenge a mechanic's lien. CT Page 5146
Turning to substance, after reviewing the submissions of counsel, reported decisions under the act, and the Act's legislative history, I conclude with some hesitation that the Act clearly and convincingly provides petitioner with a defense and that the Act requires that her application for discharge be granted.
The operative sections of the act for terms of this analysis are as follows:
 Sec. 20-419. Definitions. As used in this chapter, the following terms shall have the following meanings unless the context clearly denotes otherwise:
 (3) "Contractor" means any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement. The term "contractor" does not include a person for whom the total cash price of all of his home improvement contracts with all of his customers does not exceed one thousand dollars during any period of twelve consecutive months.
 (4) "Home improvement" includes, but is not limited to, the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or sandblasting of, or addition to any land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding, insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and waterproofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, in which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars. "Home improvement" does not include: (A) The construction of a new home; (B) the sale of goods by a seller who neither arranges to perform nor performs, directly or indirectly, any work or labor in connection with the installation or application of the goods or materials; (C) the sale of goods or services furnished for commercial or business use or for resale, provided commercial or business use does not include CT Page 5147 use as residential rental property; (D) the sale of appliances, such as stoves, refrigerators, freezers, room air conditioners and others which are designed for and are easily removable from the premises without material alteration thereof; (E) any work performed without compensation by the owner on his own private residence or residential rental property.
 (5) "Home improvement contract" means an agreement between a contractor and an owner for the performance of a home improvement.
 (6) "Owner" means a person who owns or resides in a private residence and includes any agent thereof. An owner of a private residence shall not be required to reside in such residence to be deemed an owner under this subdivision.
 (7) "Person" means an individual, partnership, limited liability company or corporation.
 (8) "Private residence" means a single family dwelling, a multifamily dwelling consisting of not more than six units, or a unit, common element or limited common element in a condominium, as defined in section 47-68a, or in a common interest community, as defined in section 47-202.
 (10) "Residential rental property" means a single family dwelling, a multifamily dwelling consisting of not more than six units, or a unit, common element or limited common element in a condominium, as defined in section 47-68a, or in a common interest community, as defined in section 47-202, which is not owner occupied.
 Sec. 20-428. Exemptions. This chapter shall not apply to any of the following persons or organizations: (1) The government of the state, municipalities of the state or any department or agency of the state or such municipalities; (2) the government of the United States or any of its departments or agencies; (3) any school, public or private, offering as part of a vocational education program courses and training in any aspect of home improvements; and (4) any person holding a current professional or occupational license issued pursuant to the general statutes, provided such person engages only in that work for which he is licensed. CT Page 5148
 Sec. 20-429. Required contract provisions . . . (a) No home improvement contract shall be valid or enforceable against an owner unless it (1) Is in writing . . .
Clearly, Gerald Levasseur, Sr. and/or Ellington Drywall were "contractors" under the Act.
I conclude, on review of the full record, that under the Act, Gerald Levasseur, Sr. and Ellington Drywall performed "home improvement" work on the residence at 157 King Street. I do not believe that Ellington Drywall comes within any of the exceptions given under the definition of "home improvement," including (C) ("the sale of goods or services furnished for commercial use or resale, provided commercial or business use does not include use as residential rental property") or (E) ("any work performed without compensation by the owner on his private residence or residential rental property.")
Under 20-419 (6), neither Ellington Drywall nor Gerald Levasseur, Sr., can be deemed an "owner" given the facts of this case, notwithstanding Mr. Levasseur's view that, by making what he characterizes as a loan, he was obtaining a partial, equitable ownership interest in the property. The statute, as written, does not permit such a finely-honed application to a situation, such as this, where there are indications in the record that home improvements were undertaken arguably for a mix of both business and personal reasons. The stipulation provides that Janice Gerrow was at all relevant times the only record owner of the subject property, and that she resided there apart from Mr. Levasseaur. The evidence does not support the conclusion that Mr. Levasseur and/or Ellington Drywall was the "owner" of the residence as that term is defined in Section 20-419 (b). Nor does the evidence indicate that Mr. Levasseur ever "resided" at 157 King Street, although he may have spent time there.
I also conclude that a "Home improvement contract" existed between the parties, as defined in 20-419 (5), although the agreement was oral, and the precise terms are imprecise and disputed. As petitioner notes, this definition is broader and more flexible than the traditional definition of a "contract".
Ellington Drywall's argument that the Act, being a consumer protection statute in its essential thrust, was not intended to apply to situations which develop out of personal relationships CT Page 5149 gone sour is somewhat persuasive at first glance. However, the argument must ultimately be rejected in light of the plain language of the Act, the exceedingly expansive scope which our Supreme Court has given the Act, and the failure of the legislature to amend the law to withdraw situations such as this from its broad reach. Wadia Enterprises, Inc. v. Hirschfeld,27 Conn. App. 162, 167 (1992).
Judge Higgins' analysis in his decision in the case of Peter Gural v. Darlene Fazzino, (Superior Court, judicial district of Middlesex at Middletown, Docket No. CV94-70800 (April 19, 1996), a case which petitioner has brought to the Court's attention, is astute and instructive.
Judge Higgins' decision in Gural indicates that plaintiff and defendant cohabited as lovers at defendant's residence for approximately five years, during which time plaintiff, a licensed home improvement contractor, made extensive improvements to the defendant's home. The cost of the improvements, for which there was no written contract, was approximately $52,000, not including labor. Following the end of the relationship, plaintiff brought suit to recover the cost of improvements to the defendant's home. After a full trial on the merits, Judge Higgins ruled for the defendant, based in large part on his view that the Home Improvement Act applied. He stated:
 This case, involving a relationship between contractor and homeowner in which improvements were made on the home in which both parties reside, presents a case of first impression under the Home Improvement Act . . .
 Nevertheless, the Home Improvement Act has been consistently interpreted by our Supreme Court to bar a contractor from recovery under every imaginable legal theory where a written contract either does not exist or fails to conform to the requirements of the Home Improvement Act. This court cannot ignore the existence of this act, relevant provisions of which have a direct impact on the outcome of this case.
 The legislative history of the Home Improvement Act reveals that the purpose of the Act "is to provide minimal . . . safeguards for the consumer who contracts for home improvement work to be done on or in the home." Caulkins v. Petrillo, 200 Conn. 713, 719, 513 A.2d 43 (1986), quoting 22 CT Page 5150 H.R. Proc., Pt. 33, 1979 Sess., p. 11, 613, remarks of Representative William P. Candelori. "[I]f recovery is permitted despite the fact that the underlying home improvement contract is invalid, a contractor could unilaterally expand the scope of the project beyond the contemplation of the invalid agreement, without the homeowner's consent and recover for the unwanted work. . . . The remedial purpose of [§] 20-429 would be placed in even greater jeopardy if a contractor could recover by merely demonstrating that services had been rendered, without even alleging that there was some sort of agreement for the work." Barrett Builders v. Miller, 215 Conn. 316, 325, 576 A.2d 455 (1990). "[I]f a home improvement contractor could, without a written contract, perform certain work and then allege an oral agreement for precisely the same work alleged to have been fully performed, the purpose and clear intent of [§] 20-429 would be thwarted." Caulkins v. Petrillo,
supra, 200 Conn. 720.
 The plain language of the act also supports its stringent application. "It is a fundamental principle of statutory construction that statutes are to be construed so that they carry out the intent of the legislature. . . . It has often been said that the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . Where the language used is clear and unambiguous, we will not speculate as to some supposed intention." (Citations omitted; internal quotation marks omitted.) Caulkins v. Petrillo, supra, 200 Conn. 716-17. "The language of [§] 20-429 (a) is clear and unambiguous: `No home improvement contract shall be valid unless it is in writing . . .' The use of the word `no' in the statute is self-explanatory. The use of the word `shall' by the legislature connotes that the performance of the statutory requirements is mandatory rather than permissive." Id., 717. "Read literally, then, it is clear that the plain language of the statute does not provide an exception to the requirement that home improvement contracts be in writing." Id., 717-18.
 With this clear language before them and with this purpose in mind, our Supreme Court, in a series of cases decided in 1990, held that "defective home improvement contracts are unenforceable under almost every imaginable theory of recovery. See Barrett Builders v. Miller,
CT Page 5151 215 Conn. 316, 576 A.2d 455 (1990) (quasi contract); A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 576 A.2d 464 (1990) (quantum meruit and unjust enrichment); Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 576 A.2d 149 (1990) (implied contract)." Wadia Enterprises, Inc. v. Hirschfeld, 27 Conn. App. 162, 167, 604 A.2d 1339 (1992). "It is interesting to note that the legislature has chosen not to revise the act following this court's interpretation of it in 1990. Despite the majority's recognition . . . . of the bad faith exception, and an invitation to address certain issues, as well as the `harsh results' as labelled by the dissent, no legislative action has been taken. The absence of any such legislative reaction to the Barrett Builders
line of cases is noteworthy. Where this court interprets a statute and the legislature fails to take action to change that interpretation, it raises the presumption that the legislature has acquiesced in that interpretation." (Citation omitted.) Habetz v. Condon, 224 Conn. 231, 239
n. 12, 618 A.2d 501 (1992).
 In view of the remedial purpose of the Home Improvement Act and its strict interpretation by our Supreme Court, this court reluctantly declines to carve out an exception to the requirements of the Home Improvement Act for the unique facts of this case. Whether intra-family or quasi-family relationships and activities should trigger the established, strict construction of this statute is a matter of legislative concern and not properly within the scope of the trial-court-statute-construction-engineering. The plaintiff is a home improvement contractor as defined by the Home Improvement Act and is, consequently, subject to its provisions. He performed home improvements on a home in which he resided but did not own. This work was performed without a written contract between the parties and, in the absence of bad faith on the part of the defendant homeowner, the plaintiff cannot recover his costs for the work performed. For these reasons, in order to effectuate the purpose of the Home Improvement Act, this court must render judgment for the defendant on both remaining counts. (Footnotes omitted).
Given the fact that plaintiff and defendant in Gural
cohabited for some five years, the argument for the applicability of the Home Improvement Act in that case is even less persuasive than it is in this one. CT Page 5152
I agree with the analysis that Judge Higgins applied, and incorporate it by reference into this decision. The Home Improvement Act by its terms is broad and remedial and must be liberally construed, See Barrett Builders at 323, and the breadth of its reach has been upheld by our Supreme Court, over strong dissenting views. The legislature has to date chosen not to amend or alter the law. Nor are interpersonal or "quasi-family" situations, to use Judge Higgins' language, included in the exemptions language of Section 20-248. Had the legislature chosen to exclude such applications of the law, it could have included an exemption for cases such as this. It did not do so. Consequently, I conclude, given the plain language of the Act, — See Liljedahl Brothers, Inc. v. Grigsby, 215 Conn. 345,349 (1990), our Supreme Court's interpretation of it, and the legislature's failure to take steps to amend the law, that based on the present record, petitioner has shown clearly and convincingly that the Act provides a defense. Like Judge Higgins, I reach this conclusion with some reluctance, because the result is clearly somewhat strained given the facts of this case and the problem the Home Improvement Act was apparently intended to remedy. The legislative may wish to consider whether the Act should apply to cases such as this or Gural. However, I conclude that a fair reading of the Home Improvement Act as presently written compels this result in the absence of a writing, and in the absence of compliance with the terms of the Act in other respects as well.[3] Caulkins v. Petrillo, 200 Conn. 713, 720
(1986).
The application for discharge is therefore granted.[4]
It is hoped that the parties to this most unfortunate dispute will attempt to resolve it without the need for further litigation.
Douglas S. Lavine Judge, Superior Court