DUBTON HOUSE, INC., Plaintiff,

v.

ST. MARYS PAPER LTD. and
St. Marys Sales Company,
Defendants.

St. Marys Paper, Ltd., Counterclaim
Plaintiff,

v.

Dubton House, Inc., Counterclaim
Defendant.

No. Civ.3:97CV02697(PCD).

United States District Court,
D. Connecticut.

Oct. 14, 1999.

Robert B. Cohen, H. James Stedronsky, Levy & Droney, P.C., Farmington, CT, Allie S. Povall, Charlotte, NC, Andrew B. Bowman, Law Offices of Andrew Bowman, Westport, CT, for Dubton House, Inc.

David R. Schaefer, Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT, Jack T. Schriver, Dean C. Gramlich, McDermott Will & Emery, Chicago, Il, Michael S. Sommer, Daniel M. Labovitz, McDermott, Will & Emery, New York City, for St. Marys Paper Ltd, St. Marys Sales Co.

## *RULING ON PENDING MOTIONS*

DORSEY, District Judge.

Defendants move for summary judgment on Counts I, II, III, V, VI, and VII of plaintiff's Third Amended Complaint pursuant to Fed.R.Civ.P. 56. For the reasons below, Defendant's motion is **granted in part.** Defendants also move to strike plaintiff's Local Rule 9(c)(2) Statement. This motion is **denied.**

## I. BACKGROUND FACTS

Plaintiff acts as a sales representative for paper mills. In 1991, plaintiff request-

ed St. Marys Sales ("SMS") cover a shortfall of paper that it was selling to Kmart Corp. for another supplier. SMS complied. Plaintiff attempted to form an agency agreement with SMS, but SMS refused.

In 1994, SMS again covered shortfalls to Kmart at plaintiff's request. Discussions of a 1995 paper program ensued. On June 30, 1994, William Tailyour, plaintiff's President, sent a proposed letter agreement to Walter Vail, President and Chief Executive Officer of SMS. Vail responded on July 18, 1994 in a letter initiating a one-year contract. Other letters and discussions followed, but no single written agreement with both parties' signatures resulted.

Plaintiff served as SMS's sales agent for sales to Kmart for 1995, 1996, and 1997 and received commissions. SMS negotiated its 1998 commitment through PREMA, Inc.[1] and accepted no orders from plaintiff for 1998.

## II. DISCUSSION

### A. *Standard of Review*

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue has been raised, all ambiguities must be resolved and all reasonable inferences be drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

### B. *Breach of Contract (Count III)*

Plaintiff alleges defendants breached a brokerage agreement whereby plaintiff would receive commissions for all of defendants' paper sales to Kmart. This contract was to last until Kmart's principal buyer, A.E. Stine, retired; if he retired prior to February 2001, defendants would provide plaintiff with equivalent volume and pay the commissions plaintiff received as broker between defendants and Kmart. Defendants argue that no writing evidences such an agreement, as required by the Statute of Frauds.

■ The Connecticut Statute of Frauds states, in relevant part:

> No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: ... (5) upon any agreement that is not to be performed within one year from the making thereof.

Conn.Gen.Stat. § 52–550(a)(5). If a contract does not explicitly negate the possibility of performance within one year, it is outside the statute of frauds. *See C.R. Klewin, Inc. v. Flagship Properties, Inc.*, 220 Conn. 569, 600 A.2d 772, 779 (1991).

■ Plaintiff argues the contract is outside of the statute of frauds because it is of infinite duration. Since its alleged contract terminates upon the retirement of Stine, which could occur within one year, plaintiff says the contract did not need to be in writing. However, plaintiff alleges that, if Stine retired prior to February 2001, defendants were still obligated to supply paper and pay commissions until that time. The contract extended to that date could not be performed within one year and is subject to the statute of frauds. Absent a contract, there can be no breach.

Two letters from SMS to plaintiff reveal the ongoing relationship between them. Nothing in these writings establishes an obligation by defendants to keep plaintiff as their agent, much less their *exclusive*

---

1. In September 1997, Kmart advised SMS that it hired PREMA to handle all aspects of paper procurement.

agent. Plaintiff, in contradiction to its allegation that the contract expired in 2001, describes the agreement as indefinite. There is no evidence of a contractual prohibition of defendants' terminating the relationship with plaintiff or requiring notice of termination. There are no allegations that defendants failed to fill an accepted order, only that they refused orders for 1998 and beyond.

Defendants' motion for summary judgment on Count III is **granted.**

### C. Part Performance (Count VI)

■ Alternatively, plaintiff claims the contract should not be subject to the statute of frauds to the extent there has been part performance. Partial performance of an otherwise unenforceable contract is a valid basis for enforcement to the extent of performance. This claim then is not an action on the contract. *See Barrett Builders v. Miller*, 215 Conn. 316, 576 A.2d 455, 458 (1990). Whether there has been part performance of an otherwise unenforceable contract is a question of fact.

■ Defendants argue that they paid plaintiff for all services performed. Plaintiff claims defendants still owe it money for its partial performance, i.e., the negotiation of orders for 1998. Whether plaintiff actually performed a contractual undertaking and whether defendants became obliged for such performance are genuine issues of material fact. Summary judgment on Count VI is **denied.**

### D. Breach of Duty of Good Faith and Fair Dealing (Count I)

■ Plaintiff alleges a breach of a duty of good faith and fair dealing. " 'Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.' " *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 687 A.2d 111, 122 (1996) (quoting *Habetz v. Condon*, 224 Conn. 231, 618 A.2d 501

(1992)). This covenant presupposes existence of a contract. *See, e.g., Neiditz v. Housing Authority*, 43 Conn.Supp. 283, 654 A.2d 812, 819 (1994). Since no enforceable agreement was in place at the time of the alleged breach, there is no such covenant implied. Defendants' motion for summary judgment on Count I is **granted.**

### E. Unjust Enrichment (Count VII)

■ Plaintiff claims defendants were unjustly enriched as they did not pay plaintiff "the reasonable value of [its] services in establishing [the business relationship between defendants and Kmart] and stream of sales," to the detriment of plaintiff. Plaintiff seeks loss of commissions for the print years 1998, 1999, and 2000.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." *Meaney v. Connecticut Hosp. Assoc.*, 250 Conn. 500, 735 A.2d 813, 820 (1999) (citation omitted). Here, there is no contract for the years 1998, 1999, and 2000. For any performed services for 1998, plaintiff can recover under the doctrine of part performance. Although plaintiff may be due credit for the defendants' business relationship with Kmart, commissions, the alleged method of compensation, have not been earned for 1999 and 2000.

Defendants' motion for summary judgment on Count VII is **granted.**

### F. Promissory Estoppel (Count IV)

Defendants seek summary judgment on Count IV if summary judgment is denied on Counts III or VI. Summary judgment was denied on Count VI. This motion is considered.

■ Plaintiff alleges, in the alternative, that 1) it detrimentally relied on defendants' promises by not developing relationships with other suppliers, and 2) defendants should be bound under the doctrine of promissory estoppel. There is a factual

dispute as to the parties' relationship and whether defendants made promises that induced reliance. This is a genuine issue of material fact.

Plaintiff suggests that Count IV is also a claim for unjust enrichment, which is duplicative of Count VII, for which summary judgment was granted to defendants. Count IV is thus limited to promissory estoppel.

Defendants' motion for summary judgment on Count IV is **denied.**

### G. *Tortious Interference with Business Expectancy (Count II)*

Plaintiff claims defendants interfered with its business expectancy by causing Kmart not to place orders with it. For actionable interference, there must be evidence of improper motive or means. Tortious conduct requires proof that defendants were "guilty of fraud, misrepresentation, intimidation or molestation ... or that [they] acted maliciously." *Robert S. Weiss & Assoc. v. Wiederlight,* 208 Conn. 525, 546 A.2d 216, 222–23 (1988) (citation omitted).

Plaintiff claims that defendants intentionally interfered with its relationship with Kmart by telling PREMA that SMS had terminated plaintiff when it had not. There is no evidence that defendants sought to harm plaintiff's relationship with Kmart. Plaintiff was free to find other suppliers for Kmart. SMS and Kmart were free to deal through PREMA. Kmart called plaintiff to fill orders on occasion.

Defendants' conduct was not tortious. The motion for summary judgment on Count II is granted.

### H. *Violations of Connecticut Unfair Trade Practices Act ("CUTPA") (Count V)*

Plaintiff claims defendants engaged in unfair or deceptive acts in violation of CUTPA. Defendants argue that the alleged conduct is not sufficient to establish a CUTPA violation.

A practice may violate CUTPA if it 1) is unlawful or offends public policy; 2) is "immoral, unethical, oppressive, or unscrupulous"; or 3) causes substantial injury to consumers. *Cheshire Mortgage Serv., Inc. v. Montes,* 223 Conn. 80, 612 A.2d 1130, 1143 (1992).

Defendants ceased using plaintiff upon Kmart's announcement of PREMA as its agent. There is nothing immoral in their acting upon Kmart's wishes. It does not violate public policy to cease accepting orders from a broker *even if* contrary to a prior promise or contract. *See Boulevard Assoc. v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1039 (2d Cir.1995) ("A rule to the contrary—that a company violates CUTPA whenever it breaks an unprofitable deal— would convert every contract dispute into a CUTPA violation").

Defendants' motion for summary judgment on Count V is **granted.**

### III. CONCLUSION

Defendants' motion for summary judgment (doc. 47) is **granted** only with respect to Counts I, II, III, V, and VII. Its motion to strike (doc. 61) is **denied** as moot.

SO ORDERED.